John A. Bennett, OSB #750407
Stuart D. Jones, OSB #842568
BULLIVANT HOUSER BAILEY PC
One SW Columbia Street, Suite 800
Portland, OR 97204
Tel.: (503) 228-6351
Fax: (503) 295-0916
Email: john.bennett@bullivant.com
        stuart.jones@bullivant.com

Melissa D'Alelio (*admitted pro hac vice*)
Sandra Badin (*admitted pro hoc vice*)
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199
Telephone: 617 267 2300
Facsimile: 617 267 8288
Email: mdalelio@robinskaplan.com
        sbadin@robinskaplan.com

*Attorneys for Defendant*
*Ohio Security Insurance Company*

### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| ZEDAN OUTDOORS, LLC DBA TAYLOR'S BAR & GRILL, an Oregon limited liability company, individually and on behalf of all others similarly situated, Plaintiff, | Case No. 3:21-cv-00407-YY |
| Plaintiff, | **DEFENDANT OHIO SECURITY INSURANCE COMPANY'S RULE 12(b)(6) MOTION TO DISMISS** |
| v. | |
| OHIO SECURITY INSURANCE COMPANY, a foreign corporation, | **REQUEST FOR ORAL ARGUMENT** |
| Defendant. | |

Defendant's Rule 12(b)(6)
Motion to Dismiss

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................ii

RULE 7-1 CERTIFICATION......................................................................................... 1

I.     MOTION.......................................................................................................... 1

II.    INTRODUCTION ........................................................................................... 1

III.   STATEMENT OF FACTS ............................................................................. 4

     A.    The Parties ........................................................................................ 4

     B.    Summary of Zedan's Allegations ................................................... 5

     C.    The Policy Provisions at Issue ........................................................ 6

     D.    The Executive Orders ...................................................................... 7

IV.   LEGAL STANDARDS ................................................................................... 9

     A.    Motions to Dismiss ......................................................................... 9

     B.    Policy Interpretation...................................................................... 10

V.    ARGUMENT ................................................................................................ 11

     A.    Zedan Fails to Meet Its Burden of Plausibly Alleging "Direct Physical Loss of or Damage to" Covered Property............................................. 11

     B.    There Is No Coverage under the Policy for Business Income or Extra Expense under the Facts Alleged. ......................................................... 17

     C.    There is No Civil Authority Coverage under the Facts Alleged......................... 20

     D.    The Policy's Virus Exclusion Bars Coverage..................................................... 26

     E.    The Loss of Use, Ordinance or Law, and Acts or Decisions Exclusions Also Bar Coverage for Zedan's Alleged Losses.............................................. 31

     F.    The Complaint Fails to State a Claim for which Relief May Be Granted. .......... 32

            1.    Zedan's claims for breach of contract and for declaratory relief fail because Ohio Security properly denied coverage. .................................. 32

            2.    The Class claims fall with Zedan's claims. ............................................. 34

            3.    Amendment would be futile.................................................................... 34

VI.   CONCLUSION.............................................................................................. 35

RULE 7-2 CERTIFICATION........................................................................................ 36

Defendant's Rule 12(b)(6)
Motion to Dismiss

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
No. 2:20-CV-04418-SVW-AS, 2020 WL 6749361 (C.D. Cal. Nov. 13, 2020).....................27

*10E, LLC v. Travelers Indemn. Co. of Conn.*,
483 F. Supp. 3d 828 (C.D. Cal. 2020) .................................................................................16

*Ascent Hospitality Mgmt. Co., LLC v. Employers Ins. Co. of Wausau*,
No. 2:20-cv-770-GMB, 2021 WL 1791490 (N.D. Ala. May 5, 2021).................15, 18, 29, 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................9, 14

*B St. Grill & Bar LLC v. Cincinnati Ins. Co.*,
No. CV-20-01326-PHX-SMB, 2021 WL 857361 (D. Ariz. Mar. 5, 2021)...........................25

*Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*,
No. 4:20 CV 1155 CDP, 2021 WL 37984 (E.D. Mo. Jan. 5, 2021) ......................................28

*Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*,
No. RDB-20-2892, 2021 WL 1400891 (D. Md. Apr. 14, 2021) ......................................20, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................9

*Boxed Foods Co., LLC v. California Capital Ins. Co.*,
497 F. Supp. 3d 516 (N.D. Cal. 2020) ..................................................................................30

*Brady v. AutoZone Stores, Inc.*,
960 F.3d 1172 (9th Cir. 2020) ...............................................................................................34

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*,
499 F. Supp. 3d 95, 2020 WL 6545893 (E.D. Pa. 2020)..................................................25, 28

*Café Plaza de Mesilla Inc. v. Cont'l Cas. Co.*,
No. 2:20-cv-354-KWR-KRS, 2021 WL 601880 (D. N.M. Feb. 16, 2021) ......................15, 23

*Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.*,
No. 20-14860, 2021 WL 1153171 (D.N.J. Mar. 26, 2021) ...................................................28

*Chattanooga Prof. Baseball LLC v. National Cas. Co.*,
No. CV-20-01312-PHX-DLR, 2020 WL 6699480 (D. Ariz. Nov. 13, 2020).................27, 30

ii

*Circus Circus LV, LP v. AIG Specialty Ins. Co.*,
No. 2:20-cv-01240-JAD-NJK, 2021 WL 769660 (D. Nev. Feb. 26, 2021) ...............16, 17, 18

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*,
No. 98-434-HU, 1999 WL 619100 (D. Or. Aug. 4, 1999) ......................................................13

*DAB Dental PLLC v. Main Street Am. Protection Ins. Co.*,
No. 20-CA-5504, 2020 WL 7137138 (Fla. Cir. Ct. Nov. 10, 2020)......................................28

*Daneli Shoe Co. v. Valley Forge Ins. Co.*,
No. 20-cv-1195 TWR (WVG), 2021 WL 1112710 (S.D. Cal. Mar. 17, 2021)......................19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .................................................................................................9

*Dickie Brennan & Co. v. Lexington Insurance Co.*,
636 F.3d 683 (5th Cir. 2011) ...............................................................................................22

*Dime Fitness, LLC v. Markel Ins. Co.*,
No. 20-CA-5467, 2020 WL 6691467 (Fla. Cir. Ct. Nov. 10, 2020)......................................28

*DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*,
No. H-20-3606, 2021 WL 1232778 (S.D. Tex. Mar. 12, 2021) ...............................................4

*Ellis v. GMAC Mortg., Inc.*,
No. 10-6319-TC, 2011 WL 1086530 (D. Or. Mar. 16, 2011) .................................................9

*Employers Ins. of Wausau v. Tektronix, Inc.*,
211 Or. App. 485, *appeal denied*, 343 Or. 363 (2007) ........................................................10

*Equity Plan. Corp. v. Westfield Ins. Co.*,
No. 1:20-CV-01204, 2021 WL 766802 (N.D. Ohio Feb. 26, 2021)......................................28

*Family Tacos, LLC v. Auto Owners Ins. Co.*,
No. 5:20-CV-01922, 2021 WL 615307 (N.D. Ohio Feb. 17, 2021)......................................28

*Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*,
No. 20-cv-3418 (JGK), 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021)....................................19

*Forge Underwriting Ltd. v. Greenspan*,
No. 3:19-CV-810-JR, 2019 WL 7633156 (D. Or. Dec. 3, 2019) ..........................................33

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
488 F. Supp. 3d 904 (N.D. Cal. 2020) ..................................................................................30

*G&A Family Enterprises, LLC v. American Family Ins. Co.*,
No. 1:20-CV-03192-JPB, 2021 WL 1947180 (N.D. Ga. May 13, 2021).........................13, 30

Defendant's Rule 12(b)(6)
                                                                                   Motion to Dismiss

*Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*,
No. CV-20-511-R, 2020 WL 8004271 (W.D. Okla. Nov. 9, 2020) ...........................15, 29, 30

*Great Am. Alliance Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*,
416 F. Supp. 3d 1098 (D. Or. 2019) .......................................................................................10

*Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. and Loan Ass'n.*,
793 F Supp. 259 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992)
(unpublished) ....................................................................................................................13, 15

*Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*,
No. 20-2171, 2021 WL 1945712 (E.D. Pa. May 14, 2021)............................13, 21, 22, 25, 26

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*,
495 F. Supp. 3d 1289 (N.D. Ga. 2020) ...................................................................................12

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*,
No. 20-14156-BB, 2021 WL 1851381 (11th Cir. Apr. 8, 2021) ...........................................12

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.*,
497 F. Supp. 3d 1203 (S.D. Ala. 2020)...................................................................................15

*Hoffman Constr. Co. v. Fred. S. James & Co.*,
836 P.2d 703 (Or. 1992) .........................................................................................................10

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as*
*Syndicate PEM 4000*,
489 F. Supp. 3d 1303 (M.D. Fla. 2020)...................................................................................15

*Isaac's Deli, Inc. v. State Auto Property and Casualty Ins. Co.*,
No. 5:20-CV-06165-JMG, 2021 WL 1945713 (E.D. Pa. May 14, 2021) ..................12, 32, 34

*Juiceme, LLC v. Booster Juice Ltd. P'ship*,
730 F. Supp. 2d 1276 (D. Or. 2010) .........................................................................................9

*Kahn v. Penn. Nat. Mut. Cas. Ins. Co.*,
No. 1:20-cv-781, 2021 WL 422607 (M.D. Pa., Feb. 8, 2021)...................................................3

*Kingray Inc. v. Farmers Grp. Inc.*,
No. EDCV 20-963 .....................................................................................................................28

*Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*,
No. 6:21-CV-00317, 2021 WL 1740466 (W.D. La. May 3, 2021) ........................................23

*Leach v. Scottsdale Indemn. Co.*,
261 Or. App. 234 (2014).........................................................................................................10

Defendant's Rule 12(b)(6)
Motion to Dismiss

37208494.5

*Levy Ad Grp., Inc. v. Chubb Corp.*,
    No. 2:20-cv-00763-JAD-DJA, 2021 WL 777210 (D. Nev. Feb. 16, 2021) ....................16, 23

*Malaube, LLC v. Greenwich Ins. Co.*,
    No. 20-22615-Civ-WILLIAMS/TORRES, 2020 WL 5051581 (S.D. Fla. Aug.
    26, 2020) .............................................................................................................................16

*Malbco Holdings, LLC v. AMCO Ins. Co.*,
    629 F. Supp. 2d 1185 (D. Or. 2009) ...................................................................................10

*Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*,
    492 F. Supp. 3d 1051 (C.D. Cal. 2020) ...............................................................................25

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
    No. 20 C 5472, 2021 WL 679227 (N.D. Ill. Feb. 22, 2021)................................................28

*Mattdogg, Inc. v. Phila. Indem. Ins. Co.*,
    No. L-820-20, 2020 WL 7702634 (N.J. Super. Ct. Law Div. Nov. 17, 2020) .................22, 31

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*,
    483 F. Supp. 3d 1189 (M.D. Fla. 2020)...............................................................................30

*Mena Catering, Inc. v. Scottsdale Ins. Co.*,
    No. 1:20-cv-23661-BLOOM/Louis, 2021 WL 86777 (S.D. Fla. Jan. 8, 2021).....................27

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
    No. 20 Civ. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020) ...........................3, 24

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .................................................................................................9

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
    487 F. Supp. 3d 834 (N.D. Cal. 2020) ..............................................................18, 22, 23, 31

*N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*,
    499 F. Supp. 3d 74, No. 20-05289, 2020 WL 6501722 (D.N.J. Nov. 5, 2020)....................28

*Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*,
    No. 1:20-CV-437, 2020 WL 7024882 (M.D.N.C. Nov. 30, 2020) ........................................27

*Newchops Rest. Comcast LLC v. Admiral Indem. Co.*,
    Nos. 20-1949, 20-1869, 2020 WL 7395153 (E.D. Pa. Dec. 17, 2020).............................28, 32

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014)....................................................................................19

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)............................................................................................................34

Defendant's Rule 12(b)(6)
                                                                                         Motion to Dismiss

*Oral Surgeons, P.C., v. Cincinnati Ins. Co.*,
    491 F. Supp. 3d 455 (S.D. Iowa 2020) ................................................................15

*Ott v. Home Sav. & Loan Ass'n*,
    265 F.2d 643 (9th Cir. 1958) .................................................................................9

*Pane Rustico, Inc. v. Greenwich Ins. Co.*,
    No. 8:20-cv-1783-KKM-AAS, 2021 WL 1087219 (M.D. Fla. Mar. 22, 2021) ....................28

*Papasan v. Allain*,
    478 U.S. 265 (1986).............................................................................................11

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*,
    491 F. Supp. 3d 738 (S.D. Cal. 2020).................................................................29

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
    487 F. Supp. 3d 937 (S.D. Cal. 2020), *leave to file amended complaint denied*,
    491 F. Supp. 3d 738 (S.D. Cal. 2020).....................................................16, 23, 25

*Patton v. Cox*,
    276 F.3d 493 (9th Cir. 2002) ...............................................................................10

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
    No. 20-cv-2211-JAR-GEB, 2020 WL 7078735 (D. Kan. Dec. 3, 2020)..........................15, 23

*Protégé Rest. Partners LLC v. Sentinel Ins. Co. Ltd.*,
    No. 20-cv-03674-BLF, 2021 WL 428653 (N.D. Cal. Feb. 8, 2021) ...........................3, 15, 23

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*,
    No. CV-01-1362-ST, 2002 WL 31495830 (D. Or. June 18, 2002) ........................................13

*Pulido v. United Parcel Serv. Gen. Servs. Co.*,
    31 F. Supp. 2d 809 (D. Or. 1998) ........................................................................10

*Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*,
    No. 2:20-cv-00087-KS-MTP, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020) ........................4

*Retirement Sys. v. Wynn*,
    829 F.3d 1048 (9th Cir. 2016) ...............................................................................7

*Rose's 1, LLC v. Erie Ins. Exch.*,
    No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) ........................16

*Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*,
    No. 20-11719, 2021 WL 391418 (E.D. Mich. Feb. 4, 2021)..................................28

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
    488 F. Supp. 3d 690 (N.D. Ill. 2020) .............................................................16, 23

Defendant's Rule 12(b)(6)
Motion to Dismiss

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
  No. 1:20-cv-01192, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020) ......................................18

*Seifert v. IMT Ins. Co.*,
  495 F. Supp. 3d 747 (D. Minn. 2020) ......................................................................................28

*Select Hospitality, LLC v. Strathmore Ins. Co.*,
  No. 20-11414-NMG, 2021 WL 1293407 (D. Mass. Apr. 7, 2021) ......................................15

*Smith v. State Farm Ins.*,
  144 Or. App. 442 (1996) ..........................................................................................................33

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ...................................................................................................34

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................................................7

*Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*,
  No. 2:20-cv-03342-JDW, 2020 WL 7024287 (E.D. Pa. Nov. 30, 2020) .............................19

*U.S. v. State of Wash.*,
  759 F.2d 1353 (9th Cir. 1985) .................................................................................................33

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*,
  No. CV 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021) ...............................................19

*Uncork & Create LLC, v. Cincinnati Ins. Co.*,
  498 F. Supp. 3d 878 (S.D. W.Va. 2020) ................................................................................29

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .....................................................................................................5

*Unmasked Mgmt. v. Century-Nat'l Ins. Co.*,
  No. 3:20-cv-01129-H-MDD, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021) ...........................20

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Co.*,
  498 F. Supp. 3d 1233 (C.D. Cal. 2020) .................................................................................19

*Whiskey Flats Inc. v. Axis Ins. Co.*,
  No. 20-3451, 2021 WL 534471 (E.D. Pa. Feb. 12, 2021) .....................................................20

*Whiskey River on Vintage, Inc. v. Ill. Cas. Co.*,
  No. 4:20-cv-185-JAJ, 2020 WL 7258575 (S.D. Iowa Nov. 30, 2020)...................................31

*Williams v. Gerber Prods. Co.*,
  523 F.3d 934 (9th Cir. 2008) .....................................................................................................9

Defendant's Rule 12(b)(6)
Motion to Dismiss

*Wyoming Sawmills, Inc. v. Transp. Ins. Co.*,
  282 Or. 401 (1978) ........................................................................................14

*Zimmerman v. HBO Affiliate Grp.*,
  834 F.2d 1163 (3d Cir. 1987) .......................................................................34

*Zwillo V, Corp. v. Lexington Ins. Co.*,
  No. 4:20-00339-CV-RK, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) ................15

**Statutes**

28 U.S.C. § 2201(a) ............................................................................................33

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................................1, 5, 9, 35

Federal Rule of Evidence 201 ..............................................................................7

LR 7-1(a) ..............................................................................................................1

LR 7-1(b) ..............................................................................................................1

LR 7-2(b) ............................................................................................................36

**Other Authorities**

11A Couch on Ins. § 167:15 ..............................................................................24

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
  1327 (4th ed.) .................................................................................................9

*Physical*, Oxford English Dictionary (2021), available at www.oed.com....................15

Defendant's Rule 12(b)(6)
                                        Motion to Dismiss

37208494.5

**RULE 7-1 CERTIFICATION**

In compliance with LR 7-1(a), the parties made a good faith effort through a telephone conference to resolve the dispute, but have been unable to do so without seeking rulings from the Court.

## I.    MOTION

In compliance with LR 7-1(b) and pursuant to Fed. R. Civ. P. 12(b)(6), defendant, Ohio Security Insurance Company ("Ohio Security") moves to dismiss plaintiff's Class Action Allegation Complaint ("Complaint") (Dkt No. 1)[1] in its entirety with prejudice because it fails to state any claim on which relief may be granted.

## II.    INTRODUCTION

Zedan Outdoors, LLC dba Taylor's Bar & Grill ("Zedan") brings this putative class action to recover under its property insurance policy issued by Ohio Security (the "Policy") for business losses allegedly arising out of the COVID-19 pandemic and the resulting Oregon government orders issued in response to the spread of the coronavirus.  Ohio Security recognizes that many businesses have been hit hard by the COVID-19 pandemic, but this does not license Zedan to rewrite the plain language of the Policy to create coverage where there is none, or to write out of the Policy a virus exclusion that precludes its claims.

Zedan asserts it is entitled to coverage under the Business Income, Extra Expense, and Civil Authority provisions of its Policy.  It alleges that it sustained economic losses as a result of having to comply with government orders that restricted its business operations for several months.

---

[1] Citations to "Dkt No. __" reference documents appearing on the Court's electronic docketing system; pincites are to the page numbers in the ECF header.

- 1 -

Defendant's Rule 12(b)(6)
Motion to Dismiss

And it asserts that Ohio Security wrongfully denied coverage for these losses. Not so. Ohio Security's denial was proper for several reasons.

First, to trigger coverage under each of the provisions on which Zedan relies, Zedan must, at a minimum, plausibly allege that its losses resulted from "direct physical loss of or damage to" covered property. This is Zedan's burden. And it fails to meet it. While Zedan offers a conclusory allegation that Oregon's executive orders caused "direct physical loss of or damage to" its covered property, such a contention carries no weight in resolving a motion to dismiss. Zedan has not alleged <u>facts</u> regarding the direct physical loss of or damage to its property sustained as a result of the government's executive orders. Instead, Zedan alleges a loss of income due to a temporary suspension of some of its business operations that rendered its property unusable for its intended purpose for a period of time. That is not enough to plead "direct physical loss of or damage to property" under Oregon law.

Zedan's failure and inability to allege direct physical loss of or damage to covered property is fatal to its claims under each of the provisions of the Policy it invokes. Zedan is also not entitled to Civil Authority coverage for additional reasons, including that it fails to allege that access to its property was prohibited, that a Covered Cause of Loss caused damage to neighboring property, or that the government orders were issued in response to this damage. Zedan must allege facts showing each of these conditions was met before it can assert entitlement to Civil Authority coverage, but Zedan does not and cannot allege facts showing any of them.

Even if Zedan could meet its initial burden of alleging facts plausibly triggering coverage, it cannot overcome the Policy's virus exclusion, which specifically bars coverage for "loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion"). The exclusion precludes coverage for loss or

Defendant's Motion to Dismiss

damage "caused by or resulting from" any virus.  The government orders suspending or restricting business operations themselves make plain that they were issued in an effort to slow the spread of the COVID-19 virus.  Any losses attributable to the orders were therefore "caused by or resulting from" the COVID-19 virus.  And by its express terms, the Virus Exclusion applies to all "forms or endorsements that cover business income, extra expense or action of civil authority," so it bars coverage for Zedan's losses under each of the Policy provisions it invokes.

Over the past year, courts across the nation, including in the Ninth Circuit, have considered whether business losses arising out of COVID-19 constitute direct physical loss of or damage to property, and whether they fall within virus exclusions.  Several such cases are currently pending in this District.  The overwhelming majority of these courts, many of them addressing <u>identical</u> policy language and similar claims, have determined that COVID-19 related business losses are not covered by property insurance policies.  *See, e.g.*, *Kahn v. Penn. Nat. Mut. Cas. Ins. Co.*, No. 1:20-cv-781, 2021 WL 422607, at *1 (M.D. Pa., Feb. 8, 2021) ("The vast majority of courts analyzing these claims have sided with the insurers, largely agreeing that the commercial insurance policies unambiguously foreclosed coverage where the business property suffered no physical damage or any tangible injury other than pure economic loss.") (analyzing applicability of "direct physical loss of or damage to" policy requirement to COVID-related business losses); *Protégé Rest. Partners LLC v. Sentinel Ins. Co. Ltd.*, No. 20-cv-03674-BLF, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) ("Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property . . . do not themselves cause or constitute 'direct physical loss of or physical damage []'. . ."); *Michael Cetta, Inc. v. Admiral Indem. Co.,* No. 20 Civ. 4612 (JPC), 2020 WL 7321405, at *8 (S.D.N.Y. Dec. 11, 2020) ("[N]early every court to address this issue has concluded that loss of

- 3 -

Defendant's Motion to Dismiss

use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property."); *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-00087-KS-MTP, 2020 WL 6503405, at *7 (S.D. Miss. Nov. 4, 2020) ("Most courts have rejected these claims and granted motions to dismiss based on the finding that the businesses' complete or partial closures due to government orders issued to slow the spread of COVID-19 do not constitute 'direct physical loss of or damage to property.'"); *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, No. H-20-3606, 2021 WL 1232778, at *4 (S.D. Tex. Mar. 12, 2021) ("The majority of courts across the country interpreting identical or similar contract language have concluded that COVID-19 does not cause a direct physical loss of or damage to property.").

Because the Policy does not cover Zedan's losses, Zedan is not entitled to the relief it seeks either on its claim for declaratory judgment, or its claim for breach of contract. Its claims should therefore be dismissed. The putative class's claims fall with Zedan's claims, and should be dismissed for the same reason. Because no further discovery or creative amendment would enable Zedan to clear its initial hurdle of plausibly alleging a claim that triggers coverage, and because it cannot avoid the Virus Exclusion, the Complaint should be dismissed in its entirety with prejudice.

## III.   STATEMENT OF FACTS

### A.   The Parties

Zedan owns and operates Taylor's Bar and Grill in Eugene, Oregon. Dkt No. 1 ¶ 2. Ohio Security is a New Hampshire insurance company with a principal place of business in Boston,

- 4 -

Defendant's Motion to Dismiss

Massachusetts. *Id.* ¶ 3. Ohio Security issued Policy No. BFS (20) 58036184 to Zedan for the period of May 17, 2019, to May 17, 2020. *Id.* ¶ 7; *see also* Exh. 1 (Certified Copy of Policy).[2]

**B.    Summary of Zedan's Allegations**

Zedan brings this action on behalf of itself and other Oregon businesses "for damages and losses sustained by Oregon businesses as a result of governmental orders that have either closed or significantly limited [their] operations . . ." *Id.* ¶ 1. Zedan alleges that starting in March 2020, it was "forced to suspend, in whole or in part, its business operations due to certain orders and directives issued by Oregon Governor Kate Brown and local civil authorities which, among other things, restricted access to and operation of Plaintiff's business, limited groups of people, curtailed travel, and generally limited commercial activity . . . " *Id.* ¶ 12. Zedan also alleges that even after being allowed to reopen, it incurred substantial expenses because it could only reopen "with significant alterations to [its] premises," including "loss of use of space, installation of barriers, increased cleaning and sanitation protocols, changing business hours and employee hours, decreased customer traffic, and generally more expensive operations . . ." *Id.* ¶ 13.

Zedan alleges the government orders caused its losses. *See, e.g.*, *id*. ¶ 12 (Orders "caused [Zedan] to suffer loss or damage"); *id.* ¶ 15 ("Plaintiff sustained direct physical loss or damage caused by the Orders."). It seeks coverage under the Policy's Business Income, Extra Expense, and Civil Authority provisions. *Id.* ¶¶ 10, 17. It asserts claims for declaratory relief and for breach

---

[2] Citations to "Exh. __" reference exhibits attached to the D'Alelio Declaration submitted herewith; pincites are to the page numbers in the ECF header. In adjudicating a motion to dismiss, courts may consider documents to which the complaint refers and that are central to the plaintiff's claim without converting the Rule 12(b)(6) motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

Defendant's Motion to Dismiss

of contract.  Both claims rely on the same allegations and arise out of Ohio Security's denial of coverage for Zedan's alleged losses.  *Id.* ¶¶ 43-48; *id.* ¶¶ 49-53.

### C.     The Policy Provisions at Issue

To trigger coverage under the Policy, Zedan must show "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."  Exh. 1 at 37. The Business Income and Extra Expense provisions also require "direct physical loss of or damage" to covered property caused by a "Covered Cause of Loss" to trigger coverage.  *See id.* at 98-99 (Business Income, Extra Expense and Extended Business Income provisions in Property Extension Plus For Restaurants).[3]  "Covered Causes of Loss," in turn, "means <u>direct physical loss</u> unless the loss is excluded or limited in this policy."  *Id.* at 69 (emphasis added).

The Civil Authority provision provides coverage for Business Income and Extra Expense losses if certain conditions are met, including that there has been damage to property other than, but in the vicinity of, the insured property ("neighboring property"), that the civil authority action "prohibits access" to the insured's premises and "to the area immediately surrounding the damaged property," and that the civil authority action "is taken in response to dangerous physical conditions resulting from the damage" to the neighboring property.  *Id.* at 55.

The Policy excludes loss or damage "caused by or resulting from" "any virus" "that induces or is capable of inducing physical distress, illness or disease."  *Id.* at 66 ("Virus Exclusion").  The Virus Exclusion applies to each of the provisions on which Zedan relies—Business Income, Extra

---

[3] The Property Extension Plus For Restaurants endorsement supersedes the Business Income (And Extra Expense) Coverage Form with respect to the Business Income, Extra Expense, and Extended Business Income provisions, but the same language requiring "direct physical loss of or damage to" covered property caused by a "Covered Cause of Loss" appears in the superseded Business Income (And Extra Expense) Coverage Form.  *See* Exh. 1 at 54.

Defendant's Motion to Dismiss

37208494.5

Expense and Civil Authority.  For the Court's convenience, the Policy's pertinent provisions are excerpted in Exhibit 2 to the D'Alelio Declaration.

### D.    The Executive Orders

Zedan does not reference any particular government order in its Complaint, or allege any facts with respect to any specific order.[4]  *See generally* Dkt No. 1.  Zedan does generally allege, however, that government orders caused its losses.  *Id.* ¶¶ 13, 15, 16, 21-23.

Governor Brown issued Executive Order 20-03 on March 8, 2020, declaring a state of emergency statewide because "the novel infectious coronavirus has created a threat to public health and safety."  Exh. A at 1.  The Order goes on to explain that "[t]he novel coronavirus causes an illness known as COVID-19.  Coronavirus are a group of viruses that can cause respiratory disease, with the potential to cause serious illness or loss of life."  *Id.*

The following week, on March 17, 2020, Governor Brown issued Executive Order 20-07, which provides that "COVID-19 may cause respiratory disease leading to serious illness or death," and that "[t]he World Health Organization considers COVID-19 to be a global pandemic."  Exh. B at 1.  The order also noted that "[s]tate and local public health officials advise that the virus is circulating in the community and expect the number of cases to increase."  *Id.* The order implemented various "social distancing and community mitigation measures" "to slow the spread

---

[4] Zedan does not attach copies of "the Orders" to its Complaint or provide citations to any government orders.  To the extent review of Oregon's Executive Orders would assist the Court in adjudicating this motion, the Court may take judicial notice of them as public records.  *See* Defendant Ohio Security's Request for Judicial Notice Pursuant to FRE 201, filed herewith.  The Court may consider documents outside of, and not attached to, a complaint when the document is either: (1) one of "which a court may take judicial notice [under Federal Rule of Evidence 201]"; or (2) is "incorporated into the complaint by reference."  *Louisiana Mun. Police Emps.' Retirement Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  The relevant Executive Orders are attached as Exhibits A-D to Ohio Security's Request for Judicial Notice Pursuant to FRE 201.

Defendant's Motion to Dismiss

of COVID-19, to protect Oregonians who are at highest risk for contracting the disease," by "redu[cing] person-to-person interaction with the goal of restricting transmission." *Id.* at 2.

As part of these restrictions, the order prohibited "restaurants, bars, taverns, brew pubs, wine bars, cafes, food courts, coffee shops, clubs, or other similar establishments that offer food or drink" from "offer[ing] or allow[ing] on-premises consumption of food or drink," but allowed such establishments to "offer food or drink for off-premises consumption (e.g., take-out or drive-through) or for delivery," provided they followed prescribed social distancing protocols. *Id.*

Governor Brown issued subsequent Executive Orders on March 23, 2020 (Executive Order 20-12) (Exh. C), and November 17, 2020 (Executive Order 20-65) (Exh. D), implementing further community mitigation measures, and implementing Oregon Health Authority guidelines. The Executive Orders prohibited certain gatherings of individuals and prohibited or suspended the operation of certain businesses to varying degrees because of the risk of transmission of COVID-19, but none of the orders prohibited access to any physical property. *See* Exhs. A-D.

The orders also did not prohibit operations with respect to restaurants, bars and other establishments, like Zedan, offering food or drink. *See, e.g.*, Executive Order 20-12 (Exh. C) at 4 ("Paragraph 2 of this Executive Order [prohibiting the operation of certain types of businesses] does not apply to restaurants, bars, taverns, brew pubs, wine bars, cafes, food courts, coffee shops, or other similar establishments that offer food or drink, which remain subject to Executive Order No. 20-07 (prohibiting on-premises consumption of food or drink, but allowing take-out or delivery service).") (internal parenthetical in original); Executive Order 20-65 (Exh. D) at 4 (same).

Defendant's Motion to Dismiss

## IV.   LEGAL STANDARDS

### A.   Motions to Dismiss

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when the plaintiff fails to allege sufficient facts to "state a claim to relief that is plausible on its face" as a matter of law.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-70 (2007); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  To survive a Rule 12(b)(6) motion, the factual allegations included in the complaint "'must be enough to raise a right to relief above the speculative level.'"  *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555); *Juiceme, LLC v. Booster Juice Ltd. P'ship*, 730 F. Supp. 2d 1276, 1279-80 (D. Or. 2010).  Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action are insufficient." *Ellis v. GMAC Mortg., Inc.*, No. 10-6319-TC, 2011 WL 1086530, at *1 (D. Or. Mar. 16, 2011) (citing *Twombly*, 550 U.S. at 555).  "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

The Court also need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwanted deductions of fact, or unreasonable interferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Ott v. Home Sav. & Loan Ass'n*, 265 F.2d 643, 648 n.1 (9th Cir. 1958) ("[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom."); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 & n. 22 (4th ed.) ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the

Defendant's Motion to Dismiss

terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit") (collecting cases).

## B.    Policy Interpretation

The interpretation of an insurance policy is a question of law for the court to decide. *See Hoffman Constr. Co. v. Fred. S. James & Co.*, 836 P.2d 703, 705-06 (Or. 1992).[5]  When construing insurance contracts, Oregon courts look to the policy as a whole, giving meaning to all terms and provisions. *Leach v. Scottsdale Indemn. Co.*, 261 Or. App. 234, 241-42 (2014).  In doing so, courts interpret defined terms as they are defined in the Policy and undefined terms according to their plain meaning. *Malbco Holdings, LLC v. AMCO Ins. Co.*, 629 F. Supp. 2d 1185, 1193-94 (D. Or. 2009).  Courts may not rewrite unambiguous policy provisions.

The insured bears the initial burden of proving that a loss is covered under the policy; only if the insured is successful in so doing does the burden shift to the insurer to demonstrate the applicability of an exclusion. *See Employers Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 509, *appeal denied*, 343 Or. 363 (2007).

---

[5] A federal court sitting in diversity applies the forum state's choice-of-law rules. *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir. 2002).  Under Oregon law, the threshold question is whether the laws of Oregon and any proposed alternative forum jurisdiction conflict. *Great Am. Alliance Ins. Co. v. SIR Columbia Knoll Assocs. Ltd. P'ship*, 416 F. Supp. 3d 1098, 1102 (D. Or. 2019).  Oregon will apply Oregon law absent a conflict. *Id.*  If there is a conflict, and both states have substantial interests, Oregon courts apply the "most significant relationship" approach. *Pulido v. United Parcel Serv. Gen. Servs. Co.*, 31 F. Supp. 2d 809, 814 (D. Or. 1998); ORS 15.360(1) (with respect to choice of law as to the "the rights and duties of the parties with regard to an issue in a contract," relevant connections include "place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party . . ."). Neither party has proposed that the law of a jurisdiction other than Oregon's should govern this dispute. Ohio Security submits that Oregon law governs this insurance dispute because the properties at issue are located in Oregon and the Policy was issued to Zedan, an Oregon citizen.  Dkt No. 1 ¶¶ 2, 6.

Defendant's Motion to Dismiss

## V.   ARGUMENT

### A.   Zedan Fails to Meet Its Burden of Plausibly Alleging "Direct Physical Loss of or Damage to" Covered Property.

Subject to its other terms, conditions, limitations and exclusions, the Policy only provides coverage for "direct physical loss of or damage to Covered Property."  Exh. 1 at 37.  Zedan attempts to meet its burden by alleging that by restricting the use of its property, Dkt No. 1 ¶¶ 1, 12-14, the government orders "<u>caused</u>" direct physical loss of or damage to its property.  *See, e.g.*, *id.* ¶ 15 ("Plaintiff sustained direct physical loss or damage caused by the Orders."); *id.* ¶ 16 ("The direct, predominant, and efficient cause of Plaintiff's direct physical loss or damage is the Orders."); *id.* ¶ 21 ("Plaintiff's 'loss of Business Income' was directly, efficiently, and proximately caused by the Orders, which resulted in the economic loss and property damage . . ."); *id.* ¶ 22 ("Plaintiff's Extra Expenses were directly, efficiently, and proximately caused by the Orders, which resulted in . . . economic loss and property damage . . ."); *id.* ¶ 23 ("The Orders caused 'damage' to other properties and Plaintiff incurred 'loss' as a result of 'civil authority that prohibits access' to Plaintiff's property.").

Zedan's allegations fall far short of establishing direct physical loss of or damage to insured property under the Policy for several reasons.  As a threshold matter, Zedan's contention that the government orders <u>caused</u> "direct physical loss or damage" to its property, *id*. ¶ 16, is a legal conclusion that carries no weight in evaluating the sufficiency of Zedan's complaint on a motion to dismiss.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").  Zedan couches its legal conclusion that the government orders "caused" "direct physical loss of or damage to" its covered property as a factual allegation, and fails to support it with any actual facts.

- 11 -

Defendant's Motion to Dismiss

Zedan's contention that the government orders "caused" "direct physical loss of or damage to" its property suffers from the added infirmity that it fails both as a matter of Policy coverage, and as a matter of law.  With respect to the former, Zedan acknowledges that to trigger coverage, the Policy requires "that such 'loss or damage' must be caused by or result from a Covered Cause of Loss."  Dkt No. 1 ¶ 21.  But Zedan ignores that the Policy defines "Covered Causes of Loss" as "direct physical loss unless the loss is excluded or limited in this policy."  Exh. 1 at 69 (emphasis added).  The government orders are not a "Covered Cause of Loss" because they are not a "direct physical loss."  As the Northern District of Georgia recently explained when addressing a similar contention:

> Under the Plaintiffs' logic, a minute before the Governor issued the Order, the dining rooms existed in one state.  A minute later, the Governor issued the Order, and the restaurant underwent a direct physical change that left the dining rooms in a different state.  This interpretation of the contractual language exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support.

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F. Supp. 3d 1289, 1294 (N.D. Ga. 2020)[6].  *See also Isaac's Deli, Inc. v. State Auto Property and Casualty Ins. Co.*, No. 5:20-CV-06165-JMG, 2021 WL 1945713, at *7 (E.D. Pa. May 14, 2021) ("A 'direct physical loss of property' requires tangible, physical alterations to the structure itself.  Plaintiff's inability to use their properties as dine-in restaurants do not satisfy this requirement because their property remained otherwise functional and sustained no structural harm.  Plaintiff has therefore failed to state a claim for a 'direct physical loss of property' under the applicable provisions of their Policy

---

[6] On appeal, the 11th Circuit remanded the case back to the district court "for the limited purpose of determining the citizenship of each member of Henry's Uptown, LLC to establish whether diversity jurisdiction existed."  *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, No. 20-14156-BB, 2021 WL 1851381, at *1 (11th Cir. Apr. 8, 2021).  The Court of Appeals addressed neither the merits of the appeal nor the district court's reasoning in arriving at its determination that plaintiffs failed to state a claim for coverage.  *See id.*

Defendant's Motion to Dismiss

with [insurer]."); *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, No. 20-2171, 2021 WL 1945712, at *8 (E.D. Pa. May 14, 2021) ("The Closure Orders, however, have no impact on the physical condition of the insured premises and do not physically make the premises either uninhabitable or unusable for their intended purpose.  As such, to read the insurance policies as covering losses from the Closure Orders would render the Policy's use of the word 'physical' meaningless or superfluous."); *G&A Family Enterprises, LLC v. American Family Ins. Co.*, No. 1:20-CV-03192-JPB, 2021 WL 1947180, at *5 (N.D. Ga. May 13, 2021) ("[T]he executive orders did not physically change the insured properties. . . . . [B]ecause the executive orders did not create a 'direct physical loss' of Plaintiffs' properties, the 'Business Income Loss' provision does not apply to Plaintiffs' claims.").

Zedan's contention that the government orders caused direct physical loss of or damage to its property also fails as a matter of law.  It is well settled that to demonstrate "direct physical loss of damage to" covered property under Oregon law, an insured must show that there was a tangible, distinct and demonstrable physical alteration of property.  *See, e.g.*, *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. 98-434-HU, 1999 WL 619100, at *3-7 (D. Or. Aug. 4, 1999) (the phrase "direct physical loss of or damage to" unambiguously requires proof of "distinct and demonstrable physical change" or alteration of property such that remedial action is necessary); *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. and Loan Ass'n.*, 793 F Supp. 259, 263 (D. Or. 1990), *aff'd*, 953 F.2d 1387 (9th Cir. 1992) (unpublished) (concluding that there was no evidence of physical loss "direct or otherwise" where a building impacted by asbestos "remained physically intact and undamaged" because the "inclusion of the terms 'direct' and 'physical' could only have been intended to exclude indirect, nonphysical losses."); *cf. Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, at *8 (D. Or. June 18, 2002) (using "distinct

- 13 -

Defendant's Motion to Dismiss

and demonstrable" standard, the court concluded that insured's house and personal property sustained direct physical loss or damage due to mold where there was actual presence of mold that physically impacted and transformed the house, the house and property could not be cleaned or repaired, and the house could be considered a total loss).

Zedan attempts to skirt the requirement that it must plead "direct physical loss of or damage to" covered property by arguing that, as used in the Policy, the term "loss" refers to "economic loss."  Dkt No. 1 ¶ 20 ("Throughout the policy, the term 'loss or damage' is used to describe Defendant's coverage obligations, and refers to distinct harms: that is, economic loss and property damage."); *id.* ¶ 21.  Of course, like its legal conclusions, Zedan's contract interpretation argument carries no weight in the evaluation of the sufficiency of its Complaint on a motion to dismiss. *Iqbal,* 556 U.S. at 679.  Even so, Zedan's argument helpfully illuminates its misapprehensions about the scope of coverage the Policy provides.  Noting that the Policy provides for the "loss of Business Income," Dkt No. 1 ¶ 20, Zedan concludes on this basis both that, as used in the Policy, "loss" must always refer to "economic loss," and that this economic loss is freestanding—it is untethered to any requirement that the economic loss be triggered, in the first instance, by some "direct physical loss of or damage to" insured property.

Zedan's interpretation of what "loss" means is belied by its own acknowledgement, in the very next paragraph of the Complaint, that the Policy covers "actual loss of Business Income [Zedan] sustains due to the necessary 'suspension' of [Zedan's] 'operations' during the 'period of restoration,'" and that the suspension of operations must, in turn, "<u>be caused by 'direct physical loss of or damage to</u>' [Zedan's] property."  *Id.* ¶ 21 (emphasis and modifications added).  The provision Zedan itself quotes states that the loss or damage to Zedan's property must be "direct" and "physical" to trigger coverage.  Freestanding economic loss is not enough.  *See, e.g, Wyoming*

Defendant's Motion to Dismiss

*Sawmills, Inc. v. Transp. Ins. Co.,* 282 Or. 401, 406-07 (1978) ("[I]nclusion of th[e] word ['physical'] negates any possibility that the policy was intended to include 'consequential or intangible damage'"); *Great N. Ins. Co.*, 793 F Supp. at 263 ("The inclusion of the terms 'direct' and 'physical' could only have been intended to exclude indirect, nonphysical losses."); *Ascent Hospitality Mgmt. Co., LLC v. Employers Ins. Co. of Wausau*, No. 2:20-cv-770-GMB, 2021 WL 1791490, at *3 (N.D. Ala. May 5, 2021) ("[W]ithin the context of this policy, both loss and damage to property must be 'physical,' which is defined as 'of or relating to matter or the material world; natural; tangible, concrete.'") (citing *Physical*, Oxford English Dictionary (2021), available at www.oed.com).

Not surprisingly, an ever-growing majority of courts across the country have rejected claims that COVID-19 government orders either constitute or cause physical loss of or damage to property.[7] Courts in the Ninth Circuit are part of this growing trend. *See e.g.*, *Protégé*, 2021 WL

---

[7] *See e.g.*, *Ascent Hospitality,* 2021 WL 1791490, at *4 (COVID-19 government closure orders "do not cause actual physical change to property"); *Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *4-5 (W.D. Mo. Dec. 2, 2020) (examining cases finding that COVID-19 related closures do not constitute physical damage or loss and holding that "simple deprivation of use" does not encompass "physical loss or damage"); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 497 F. Supp. 3d 1203, 1211 (S.D. Ala. 2020) (loss of usability does not "result from an immediate occurrence which tangibly altered its property—the Order did not immediately cause some sort of tangible alteration to Plaintiff's office"); *Select Hospitality, LLC v. Strathmore Ins. Co.*, No. 20-11414-NMG, 2021 WL 1293407, at *3 (D. Mass. Apr. 7, 2021); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-cv-2211-JAR-GEB, 2020 WL 7078735, at *1-8 (D. Kan. Dec. 3, 2020); *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co.*, No. CV-20-511-R, 2020 WL 8004271, at *2 (W.D. Okla. Nov. 9, 2020) (insured failed to allege covered direct physical loss or damage by merely alleging "that its loss of income arose from the suspension of its business in compliance with the Governor's Executive Order"); *Café Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, No. 2:20-cv-354-KWR-KRS, 2021 WL 601880, at *6-7 (D. N.M. Feb. 16, 2021) (dismissing insured's claim for business income sustained as a result of COVID-19 executive orders limiting or closing business operations because the insured's claim is "based purely on economic loss as a result of the closure orders" and not the policy prerequisite of direct physical loss); *Oral Surgeons, P.C., v. Cincinnati Ins. Co.*, 491 F. Supp. 3d 455 (S.D. Iowa 2020) (granting motion to dismiss because no physical or accidental loss from COVID-19 closures); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate*

- 15 -

Defendant's Motion to Dismiss

428653, at *4 ("Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property . . . do not themselves cause or constitute 'direct physical loss of or physical damage []' . . ."); *Levy Ad Grp., Inc. v. Chubb Corp.*, No. 2:20-cv-00763-JAD-DJA, 2021 WL 777210, at *1-3 (D. Nev. Feb. 16, 2021) ("'economic losses' caused by COVID-19 closures . . . do not trigger policy coverage predicated on direct physical loss or damage"); *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, No. 2:20-cv-01240-JAD-NJK, 2021 WL 769660, at *4 (D. Nev. Feb. 26, 2021) (closure or suspension of businesses due to COVID-19 orders is not "direct physical loss or damage"); *10E, LLC v. Travelers Indemn. Co. of Conn.*, 483 F. Supp. 3d 828, 835-36 (C.D. Cal. 2020) (dismissal of complaint alleging that COVID-19 orders caused physical damage at restaurant because restrictions interfered with use or value of property; they did not cause direct physical loss or damage); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp. 3d 937, 942-44 (S.D. Cal. 2020) (no direct physical loss of or damage to property where inability to operate business was due to COVID-related government orders), *leave to file amended complaint denied*, 491 F. Supp. 3d 738 (S.D. Cal. 2020).

---

*PEM 4000*, 489 F. Supp. 3d 1303 (M.D. Fla. 2020) (dismissing with prejudice complaint alleging losses resulting from COVID-19 orders because no direct physical loss of or damage to property); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. 2020) ("The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure") (internal citation omitted); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-Civ-WILLIAMS/TORRES, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) (granting insurer's motion to dismiss under Florida law: "it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical"); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Ct. Aug. 6, 2020) (finding no "direct physical loss," because, *inter alia*, COVID-19 orders "did not have any effect on the material or tangible structure of the insured properties").

Defendant's Motion to Dismiss

Because Zedan has not alleged and cannot prove direct physical loss of or direct physical damage to covered property, it is not entitled to coverage under any of the Policy provisions it invokes. This ground alone warrants dismissal of the Complaint in its entirety and with prejudice.

**B.     There Is No Coverage under the Policy for Business Income or Extra Expense under the Facts Alleged.**

Zedan's failure to allege direct physical loss of or damage to its property is fatal to its claim for Business Income and Extra Expense coverage. *See* Exh. 1 at 98-99 (both provisions require "direct physical loss of or damage to" insured property to trigger coverage). The Business Income provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by <u>direct physical loss of or damage to your covered Building or Business Personal Property</u> at locations which are described in the Declarations. <u>The loss or damage must be caused by or result from a Covered Cause of Loss</u>.

*Id.* at 98 (emphasis added); *see also id.* at 99 (Extended Business Income provision) (same).

The Extra Expense provision provides coverage for "the actual and necessary Extra Expense you incur due to direct physical loss of or damage to the property at the locations described in the Declarations, . . . caused by or resulting from a Covered Cause of Loss." *Id.* at 98. "Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* "[D]irect physical loss of or damage to" covered property must be "caused by or result from a Covered Cause of Loss," which, again, is defined as "direct physical loss . . . unless the loss is excluded." *Id.* at 98-99, 69. Given the absence of direct physical loss or direct physical damage, as discussed in the previous Section, there is no coverage under these provisions.

Defendant's Motion to Dismiss

Additional Policy language further supports the conclusion that temporary restrictions on certain of Zedan's operations do not fall within the coverage provisions.  Both provisions refer to the Policy's "period of restoration," which is "the period of time" beginning either "72 hours after the time of direct physical loss or damage for Business Income Coverage," or "[i]mmediately after the time of direct physical loss or damage for Extra Expense Coverage"—but in either case the physical loss or damage must be "caused by or resulting from any covered Cause of Loss at the described premises."  *Id.* at 98-99, 100.  Further, it ends either on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality," or "the date when business is resumed at a new permanent location," whichever is earlier. *Id.* at 100.

As defined in the Policy, the "period of restoration," contemplates a physical change to insured property that is capable of being remedied through repair or replacement.  Here, there is no allegation of any physical damage to property that needs to be "repaired, rebuilt or replaced." The definition of the "period of restoration" confirms that some tangible alteration to covered property is required to trigger coverage.

Federal courts around the country, including in the Ninth Circuit, agree, finding of no coverage for COVID-19 business interruption losses such as those Zedan claims.  *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.,* 487 F. Supp. 3d 834, 840 (N.D. Cal. 2020) ("The words . . . 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Ascent Hospitality*, 2021 WL 1791490, at *9-11 (the definition of "period of liability" "confirms that direct physical loss or damage requires an actual physical change to property" and government orders "do not cause actual physical change to property"); *Santo's Italian Café LLC v. Acuity Ins. Co.*, No. 1:20-cv-01192, 2020 WL 7490095, at *10 (N.D. Ohio

- 18 -

Defendant's Motion to Dismiss

37208494.5

Dec. 21, 2020) (insured's argument "would render large parts of the '*period of restoration*' definition nonsensical because intangible losses cannot be repaired, rebuilt, or replaced"); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Co.*, 498 F. Supp. 3d 1233, 1238 (C.D. Cal. 2020) (policy's "period of restoration" provision implies that "loss or damage be physical in nature"); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.,* No. 2:20-cv-03342-JDW, 2020 WL 7024287, at *4 (E.D. Pa. Nov. 30, 2020) (the period of restoration makes "clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement"); *Daneli Shoe Co. v. Valley Forge Ins. Co.*, No. 20-cv-1195 TWR (WVG), 2021 WL 1112710, at *4 (S.D. Cal. Mar. 17, 2021) ("Here, the period of restoration never began, since Plaintiff's premises never suffered any 'physical loss or damage.' The fact that the Plaintiff's property does not require any 'rebuilding, repairing, or replacing' for Plaintiff to regain possession only proves this point.'"); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3418 (JGK), 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) (finding coverage without physical loss or damage would render "meaningless" requirement that coverage period ends when property should have been "repaired, rebuilt, or replaced"); *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, No. CV 20-2401, 2021 WL 131556, at *7 (E.D. Pa. Jan. 14, 2021) (holding that if "mere loss of use counted as 'direct physical loss of' property, the 'period of restoration' language would be rendered a nullity."); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (explaining that "repair" and "replace" in period of restoration clause "contemplate physical damage to the insured premises as opposed to loss of use of it").

No amount of rebuilding, repair, or replacement will help Zedan, because its loss is not physical in nature. Zedan does allege that it had to make "significant alterations to [its] premises"

- 19 -

Defendant's Motion to Dismiss

as a result of the Orders, including "installation of barriers" and "increased cleaning and sanitation protocols." Dkt No. 1 ¶ 13. But this allegation is not sufficient to sustain a claim for Extra Expense coverage because the alterations were not made in response to "direct physical loss of or damage to property" that was itself caused by a "Covered Cause of Loss." *See, e.g.*, *Unmasked Mgmt. v. Century-Nat'l Ins. Co.*, No. 3:20-cv-01129-H-MDD, 2021 WL 242979, at *2 (S.D. Cal. Jan. 22, 2021) (dismissing complaint for failure to allege that business losses were caused by "'direct physical loss or damage to'" property, even though plaintiffs also alleged that "they had to alter their premises in several ways to socially distance" such as by installing plexiglass to "separate guests and employees."); *Whiskey Flats Inc. v. Axis Ins. Co.*, No. 20-3451, 2021 WL 534471, at *4 (E.D. Pa. Feb. 12, 2021) ("Plaintiff's claim here is for Business Income coverage, the costs associated with decontaminating the property or altering it to allow for social distancing do not bear on whether the cause of the losses is covered."); *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, No. RDB-20-2892, 2021 WL 1400891, at *2 (D. Md. Apr. 14, 2021) (same).

Because Zedan has not (and cannot) meet its initial burden of establishing Business Income or Extra Expense coverage, its claims for coverage under these provisions should be dismissed.

### C.    There is No Civil Authority Coverage under the Facts Alleged.

Zedan also cannot meet its burden of plausibly alleging coverage under the Civil Authority provision. The Civil Authority provision provides coverage for Business Income and Extra Expense losses sustained "[w]hen a Covered Cause of Loss [*i.e.*, "direct physical loss" unless excluded] causes damage to property other than property at the described premises." Exh. 1 at 55; *id.* (further requiring the insured premises to be within 1 mile from the damaged property). The provision then requires, *inter alia,* that the action of civil authority: (1) "prohibits access to the described premises," (2) prohibits access to "the area immediately surrounding the damaged

Defendant's Motion to Dismiss

property," and (3) is taken either "in response to dangerous physical conditions resulting from the damage," or "to enable a civil authority to have unimpeded access to the damaged property." *Id.*

The provision demands a specific order of causation: a Covered Cause of Loss must cause "damage to property other than property at the described premises," and that property must be within one mile of the premises; then, there must be "dangerous physical conditions resulting from" that damage; and finally, the orders must be issued "in response to" those dangerous physical conditions. *Id.* Zedan's allegations fail to meet the plain terms of the Civil Authority provision at every turn.

First, Zedan does not allege any facts suggesting a direct physical loss causing damage to property other than, but within a mile of, its premises. Zedan does contend that the government "Orders caused 'damage' to other properties and [that] Plaintiff incurred 'loss' as a result of 'civil authority that prohibits access' to Plaintiff's property." Dkt No. 1 ¶ 23. But this contention fails for the reasons already discussed in Section V.A. It also fails because Zedan does not allege that the "other properties" to which it refers were within 1 mile of its own premises. *See generally* Dkt No. 1. The absence of any such allegation is sufficient to defeat Zedan's claim for coverage under the Civil Authority provision. *See, e.g., Hair Studio 1208*, 2021 WL 1945712, at *10 ("The Amended Complaint here, however, is devoid of any allegation that any property 'within one mile' of the insured premises experienced any 'direct physical loss or direct physical damage.' The absence of any such allegation is fatal to Plaintiff's claim.").

Second, and more fundamentally, Zedan's contention fails because it reverses the causal order necessary to trigger coverage under the Civil Authority provision. Zedan alleges that the government orders <u>caused</u> damage to other properties—not, as the provision requires, that the government orders were issued <u>in response to</u> any physical loss of or damage to other properties,

- 21 -

Defendant's Motion to Dismiss

or to the dangerous conditions resulting from that loss or damage.  Nor does Zedan allege that access to the area immediately surrounding its own premises was prohibited by government order because of the dangerous conditions resulting from the loss or damage to properties within a mile of its premises.  *See generally* Dkt No. 1.  This failure is also fatal to Zedan's claim for Civil Authority coverage.

Without a causal link between the government orders and physical damage to neighboring property caused by a Covered Cause of Loss, Zedan cannot establish coverage under the Civil Authority provision.  *See, e.g.*, *Dickie Brennan & Co. v. Lexington Insurance Co.*, 636 F.3d 683, 686 (5th Cir. 2011) ("The civil authority order was 'based on fears of future attacks,' not on prior physical damage, so the insured failed to establish the necessary causal link between prior property damage and the civil authority order."); *Mattdogg, Inc. v. Phila. Indem. Ins. Co.*, No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law Div. Nov. 17, 2020) ("The provision applies only in specifically defined circumstances regarding damage to a nearby property . . . Plaintiff alleges no facts establishing any nexus between damage to nearby property and Governor Murphy's orders.").

Although Zedan does not say why the government orders were issued—indeed, the word "virus" appears nowhere in the Complaint—the Orders themselves state they were issued to slow the spread of the COVID-19 virus and thereby protect public health.  They were not issued in response to any prior physical loss of or damage to property.  *See generally* Exhs. A-D.  This fact alone warrants dismissal of Zedan's claim for Civil Authority coverage.  *See, e.g.*, *Mudpie*, 487 F. Supp. 3d at 844 ("Because the orders were preventative—and absent allegations of damage to adjacent property—the complaint does not establish the requisite causal link between prior property damage and the government's closure order."); *Hair Studio 1208*, 2021 WL 1945712, at

Defendant's Motion to Dismiss

*10 ("[T]he relevant Closure Orders were not issued in response to 'dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss.'  Rather, the Closure Orders were issued to *prevent* the spread of the COVID-19 virus to any of these properties.  That fact brings this claim outside the coverage of the Civil Authority endorsement.").

Like the court in *Mudpie*, courts across the country, including in the Ninth Circuit, addressing claims for coronavirus coverage have concluded that government orders issued to stem the spread of the virus are not covered under civil authority provisions.  *See e.g.*, *Levy*, 2021 WL 777210, at *3-4 (claim for civil authority coverage fails where plaintiff fails to allege that the governor's orders restricting business operations resulted from or was caused by physical loss or damage caused by COVID-19); *Promotional,* 2020 WL 7078735, at *9-10; *Café Plaza*, 2021 WL 601880, at *7 (insured not entitled to coverage under civil authority provision "because the closure orders were issued to minimize the spread of COVID-19 and not due to any direct physical loss or damage sustained at any adjacent property"); *Protégé*, 2021 WL 428653, at *6 (no civil authority coverage where the relevant closure orders said they were created to slow the spread of COVID-19, not in response to physical loss or damage); *Pappy's Barber Shops*, 487 F. Supp. 3d at 945 ("Just as the complaint does not plausibly allege any direct physical loss of Plaintiff's property, it also does not allege any direct physical loss or damage to property not at Plaintiffs' places of business."); *Sandy Point Dental*, 488 F. Supp. 3d at 694 ("[T]he complaint has not (and likely could not) allege that the coronavirus caused direct physical loss to other property."); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *4 (W.D. La. May 3, 2021) ("The policy's Civil Authority endorsement only applies to civil authority orders issued 'due to direct physical loss of or damage to property.'  . . . [Plaintiff] has not alleged facts

- 23 -

Defendant's Motion to Dismiss

sufficient to show that any relevant [government] order could trigger coverage under this endorsement.").

Third, Zedan does not even allege that access to its own premises—let alone to the area immediately surrounding it—was "prohibited" by any government orders. At most, it makes a generalized allegation that government orders "have either closed or significantly limited the operations" of Oregon businesses. *See, e.g.*, Dkt No. 1 ¶¶ 1, 13 ("As a direct result of the Orders, Plaintiff was unable to operate its business, in whole or in part, while the Orders remained in effect."); *id.* ¶ 12 ("Beginning in March 2020, Plaintiff was forced to suspend, in whole or in part, its business operations due to certain orders and directives issued by Oregon Governor Kate Brown and local civil authorities which, among other things, restricted access to and operation of Plaintiff's business . . ."). But Zedan has alleged that it "owns and operates Taylor's Bar and Grill"—a restaurant. *Id.* ¶ 2. And the government orders restricting or suspending business operations were clear that establishments serving food and drink were permitted to continue to "offer food or drink for off-premises consumption (e.g., take-out or drive-through) or for delivery," provided they followed prescribed social distancing protocols. Exh. B at 2 (Order 20-07, March 17, 2020); *see also* Exh. C at 4 (Order 20-12, March 23, 2020) (same); Exh. D at 4 (Order 20-65, November 17, 2020) (same).

For Civil Authority coverage to apply, "access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A Couch on Ins. § 167:15. Of course, businesses, like Zedan, were required only to limit their operations. They were not required to suspend operations altogether, and cannot be said to have been "prohibited" from accessing their premises since they were permitted to continue operations, albeit on a reduced scale. *See, e.g., Michael Cetta*, 2020 WL 7321405, at *12 ("The fact that [plaintiff] could have

- 24 -

Defendant's Motion to Dismiss

continued to operate its restaurant in some capacity is fatal to [plaintiff's] claims for civil authority

coverage.").

      While the government orders may have temporarily limited some business operations, they

did not prohibit access to business property owners' premises.  *See, e.g.*, Exhs. A-D.  As the

Southern District of California recently explained in *Pappy's Barber Shops*:

> [T]he complaint does not allege that any COVID-19 Civil Authority Orders
> prohibited Plaintiffs from access to their business premises.  Rather, it only alleges
> that Plaintiffs were prohibited from operating their businesses at their premises.
> Plaintiffs fail to make any distinction between their place of business (*i.e.*, the
> physical premises where they operate their business), and the business itself, but
> this distinction is relevant to coverage under the Policy.  The Policy insures
> property, in this case Plaintiffs' property and physical places of business, and not
> Plaintiff's business itself.  To that end, the civil authority coverage provision only
> provides coverage to the extent that access to Plaintiff's physical premises is
> prohibited, and not if Plaintiff's [sic] are simply prohibited from operating their
> business.  The government orders alleged in the complaint prohibit the operation of
> Plaintiff's business; they do not prohibit access to Plaintiffs' place of business.

487 F. Supp. 3d at 945.

      The critical distinction between a prohibition of business operations and a prohibition of

access to certain property is recognized in cases across the country addressing the scope of

coverage under civil authority provisions.  *See e.g.*, *B St. Grill & Bar LLC v. Cincinnati Ins. Co.*,

No. CV-20-01326-PHX-SMB, 2021 WL 857361, at *1-2, *6 (D. Ariz. Mar. 5, 2021) (no civil

authority coverage where the orders did not prohibit access, but merely prohibited the public from

patronizing the restaurant and otherwise limited use); *Mark's Engine Co. No. 28 Rest., LLC v.

Travelers Indem. Co. of Conn.*, 492 F. Supp. 3d 1051, 1057 (C.D. Cal. 2020) (noting plaintiff had

complete access after COVID-19 orders issued; only customers who were not parties to the policy

arguably lost access); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 2020

WL 6545893, at *4 (E.D. Pa. 2020) ("Absent facts of . . . prohibited access to the property, plaintiff

cannot sustain a claim for coverage under the civil authority provision of this policy."); *Hair Studio

- 25 -

*1208*, 2021 WL 1945712, at *10 ("Plaintiff has not alleged that the Closure Orders prohibited access to the scheduled premises as required by the Civil Authority endorsement. Rather, Plaintiff contends that it lost access to its hair salon for its intended purpose, including hair styling, washing, and coloring. Such an allegation is insufficient to meet the Civil Authority endorsement.") (internal quotation marks, modification, and citation omitted).

Because Zedan has not (and cannot) meet its initial burden of establishing Civil Authority coverage, its claims for coverage under this provision should be dismissed.

### D.     The Policy's Virus Exclusion Bars Coverage.

Even if Zedan could plausibly allege facts showing its losses fall within any of the coverage provisions on which it relies, its Complaint would still fail to state a claim because those losses are barred by the Policy's Virus Exclusion.

As noted above, common to the Policy's coverage provisions is the requirement that the loss be caused by or result from a Covered Cause of Loss. Exh. 1 at 37. "Covered Causes of Loss" are defined as "direct physical loss <u>unless the loss is excluded or limited in this policy.</u>" *Id.* at 69 (emphasis added). The Policy provides that Ohio Security "will not pay for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." *Id.* at 66 (Virus Exclusion). The exclusion applies whether the loss is caused by or results from a virus. *Id.* ("will not pay for loss or damage caused by or resulting from any virus"). And it applies to Civil Authority, Business Income, and Extra Expense coverages. *Id.* ("The exclusion set forth in Paragraph **B.** [Virus Exclusion] applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.").

- 26 -

Defendant's Motion to Dismiss

Zedan's alleged losses, which it contends were caused by government orders issued to slow the spread of the COVID-19 virus, fall squarely within the Virus Exclusion. Courts in the Ninth Circuit have held that <u>identical</u> or similar virus exclusions bar coverage for losses caused by similar government orders. In *10E, LLC v. Travelers Indem. Co. of Conn.*, for example, the Central District of California held that an identical virus exclusion "provides an independent basis for granting the motion to dismiss as to Business Income, Extra Expense, and Civil Authority coverage." No. 2:20-CV-04418-SVW-AS, 2020 WL 6749361, at *2 (C.D. Cal. Nov. 13, 2020) ("The Policy's virus exclusion states that '[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.' This exclusion applies to 'forms or endorsements that cover business income, extra expense . . . or action of civil authority.'") (internal citations omitted); *Chattanooga Prof. Baseball LLC v. National Cas. Co.,* No. CV-20-01312-PHX-DLR, 2020 WL 6699480, at *2 (D. Ariz. Nov. 13, 2020) (holding that virus exclusion providing that insurer "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism" barred plaintiffs' claims for COVID-related economic losses).

Many other courts around the country have reached the same conclusion. *See, e.g.*, *Mena Catering, Inc. v. Scottsdale Ins. Co.*, No. 1:20-cv-23661-BLOOM/Louis, 2021 WL 86777, at *9 (S.D. Fla. Jan. 8, 2021) (applying identically worded virus exclusion and holding that "[e]ven if Plaintiff were able to allege facts triggering coverage under the Policy, the Virus Exclusion would still apply to bar coverage."); *Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 1:20-CV-437, 2020 WL 7024882 (M.D.N.C. Nov. 30, 2020) (holding that identically worded virus exclusion, along with two other, slightly differently worded virus exclusions in other

- 27 -

Defendant's Motion to Dismiss

policies, all barred plaintiffs' claims for COVID-related losses).[8]    That conclusion is also

warranted here.  The plain and unambiguous terms of the Virus Exclusion bar the Center's claims

under all coverage provisions invoked in the Complaint.

In an effort to avoid the Virus Exclusion, Zedan nowhere mentions the word "virus" in its

Complaint, and mentions "COVID-19" only once, even though it alleges that the government

---

[8] *See also N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.,* 499 F. Supp. 3d 74, No. 20-05289 (RBK/KMW), 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020) (holding that virus exclusion providing that insurer "will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism" barred plaintiffs' claims for COVID-related economic losses); *Family Tacos, LLC v. Auto Owners Ins. Co.,* No. 5:20-CV-01922, 2021 WL 615307, at *9 (N.D. Ohio Feb. 17, 2021) ("[T]he policy excludes coverage for any loss or damage, directly or indirectly, from '[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.' [] On its face, this language is not ambiguous and excludes coverage for the lost use of property Plaintiff claims."); *Seifert v. IMT Ins. Co.,* 495 F. Supp. 3d 747, 750 (D. Minn. 2020) (holding that virus exclusion that "precludes coverage for any loss or damage caused indirectly or directly by any 'virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease'" barred coverage for plaintiff's COVID-related losses); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.,* 499 F. Supp. 3d 95, No. 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020) ("The policy at issue unambiguously states that defendant will not cover loss or damage if caused, either directly or indirectly, by '[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.'  There is no other way to characterize COVID-19 than as a virus which causes physical illness and distress. Therefore, the virus exclusion unambiguously bars coverage for plaintiff's claims due to COVID-19."); *Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.,* No. 20-14860, 2021 WL 1153171, at *3 (D.N.J. Mar. 26, 2021); *Pane Rustico, Inc. v. Greenwich Ins. Co.,* No. 8:20-cv-1783-KKM-AAS, 2021 WL 1087219, at *2 (M.D. Fla. Mar. 22, 2021); *Kingray Inc. v. Farmers Grp. Inc.,* No. EDCV 20-963 JGB (SPx), 2021 WL 837622, at *6 (C.D. Cal. Mar. 4, 2021); *Equity Plan. Corp. v. Westfield Ins. Co.,* No. 1:20-CV-01204, 2021 WL 766802, at *17-18 (N.D. Ohio Feb. 26, 2021); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.,* No. 20 C 5472, 2021 WL 679227, at *3-4 (N.D. Ill. Feb. 22, 2021); *Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.,* No. 20-11719, 2021 WL 391418, at *3 (E.D. Mich. Feb. 4, 2021); *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.,* No. 4:20 CV 1155 CDP, 2021 WL 37984, at *6 (E.D. Mo. Jan. 5, 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.,* Nos. 20-1949, 20-1869, 2020 WL 7395153, at *8-9 (E.D. Pa. Dec. 17, 2020); *Dime Fitness, LLC v. Markel Ins. Co.,* No. 20-CA-5467, 2020 WL 6691467, at *5-6 (Fla. Cir. Ct. Nov. 10, 2020); *DAB Dental PLLC v. Main Street Am. Protection Ins. Co.,* No. 20-CA-5504, 2020 WL 7137138, at *6–7 (Fla. Cir. Ct. Nov. 10, 2020).

Defendant's Motion to Dismiss

orders caused its losses.[9]   *See generally* Dkt No. 1; *id.* ¶ 11 (mentioning COVID-19); *id.* ¶ 21 ("Plaintiff's 'loss of Business Income' was directly, efficiently, and proximately caused by the Orders, which resulted in the economic loss and property damage . . ."). Zedan's attempt to divorce the government orders from the COVID-19 virus is unavailing. For one thing, Zedan itself implicitly concedes that the government orders were issued in response to the COVID-19 virus. *Id.* ¶¶ 11-12 (alleging that COVID-19 spread to the United States in January 2020, and that beginning in March 2020, Oregon issued the orders).

Zedan cannot avoid the reality that the government orders were issued to slow transmission of the COVID-19 virus by not mentioning that fact. The orders themselves state they were issued in response to—and in an effort to slow the spread of—the COVID-19 virus. *See* Exhs. A-D. The orders also plainly show that the COVID-19 virus is the type of virus contemplated by the Virus Exclusion—i.e., is one that "induces or is capable of inducing physical distress, illness or disease." Exh. 1 at 66. *See, e.g.*, Exh. A at 1 ("Coronavirus are a group of viruses that can cause respiratory disease, with the potential to cause serious illness or loss of life"); *Goodwill*, 2020 WL 8004271,

---

[9] Given that Zedan does not mention the term "virus" anywhere in its Complaint, and mentions "COVID" only once, it is not surprising that Zedan does not allege the virus's presence at, or its effect on Zedan's property. Even if it had, however, such an allegation would not suffice to state a claim for relief. As many courts have determined, the COVID-19 virus does not cause "direct physical loss of or damage to" property. *See, e.g.*, *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) ("[T]he presence of the virus itself, or of individuals infected [by] the virus, at Plaintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property."); *Uncork & Create LLC, v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 884 (S.D. W.Va. 2020) ("COVID-19 poses a serious risk to people gathered in proximity to one another," but "[p]roperty . . . is not physically damaged or rendered unusable or uninhabitable."); *Ascent Hospitality*, 2021 WL 1791490, at *4 ("[V]iral contamination does not constitute direct physical loss or damage or amount to harm to property that requires repair or replacement. At most, the presence of COVID-19 would require Ascent to clean and disinfect its locations.").

Defendant's Motion to Dismiss

at *4 ("By its terms, the exclusion applies because COVID-19 is a virus that 'is capable of inducing physical distress, illness or disease'").

Because Zedan alleges its losses were caused by the government orders, and because the orders in turn were caused by the virus, Zedan's losses fall squarely within the Virus Exclusion. As the District of Oklahoma recently explained:

> The mandated closures, which caused [the insured] to seek declaratory judgment, resulted from the ability, or capability, of COVID-19 to 'induc[e] physical distress, illness or disease.' Thus, even if [the insured] alleged a Covered Loss, the Virus Endorsement would exclude coverage. [. . .] Here, 'the plain, unambiguous meaning of the Virus [Endorsement] . . . negates coverage.' Therefore, COVID-19 clearly qualifies as a 'virus' that caused Goodwill to close its doors, which bars coverage under the Virus Endorsement.

*Goodwill*, 2020 WL 8004271, at *5 (internal citations omitted).   A court in the Northern District of California put it even more pithily: "Thus, under Plaintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply.  Nonsense." *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.,* 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020).

Courts around the country have reached the same conclusion.  *See, e.g.*, *Chattanooga*, 2020 WL 6699480, at *3 (dismissing claim because "[t]here is no allegation in the complaint that absent the pandemic, the government would have been prompted to issue stay-at-home orders . . ."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1191-92 (M.D. Fla. 2020) (virus exclusion excluded coverage for loss of business income due to COVID-19 orders); *Boxed Foods Co., LLC v. California Capital Ins. Co.*, 497 F. Supp. 3d 516, 522 (N.D. Cal. 2020) ("The Civil Authority Orders would not exist absent the presence of COVID-19; COVID-19 is therefore the efficient proximate cause of Plaintiffs' losses.  Thus, the Virus Exclusion precludes Plaintiffs' claim for business income losses and extra expenses under the Civil Authority provision."); *G&A Family Enterprises*, 2021 WL 1947180, at *6 (holding that virus exclusion

- 30 -

Defendant's Motion to Dismiss

barred coverage because "[n]o dispute exists that COVID-19 is a virus and that Plaintiffs have alleged that they have suffered losses because of the executive orders implemented to combat the virus. Here, Plaintiffs claim no losses that were not caused, at least indirectly, by the virus. As such, even if Plaintiffs' claims were covered under the policies, the virus exclusions would apply to bar the claims."); *Mattdogg*, 2020 WL 7702634, at *4 (analyzing identical virus exclusion and holding that "any losses incurred [from the government orders] are squarely within the exclusion.").

Because Zedan's alleged losses are barred by the Virus Exclusion, its claims for coverage under every Policy provision on which it relies should be dismissed.

### E. The Loss of Use, Ordinance or Law, and Acts or Decisions Exclusions Also Bar Coverage for Zedan's Alleged Losses.

Zedan alleges that it sustained economic losses because it lost the use of its property due the government orders. *See, e.g.*, Dkt No. 1 ¶ 12 ("Beginning in March 2020, Plaintiff was forced to suspend, in whole or in part, its business operations . . ."); *id.* ¶ 13 ("As a direct result of the Orders, Plaintiff was unable to operate its business, in whole or in part, while the Orders remained in effect."); *id.* ¶ 14 (". . . Plaintiff's business property cannot be used for its intended purposes and its business activities have necessarily been suspended or interrupted."). The Policy expressly bars such "loss of use" from coverage. Exh. 1 at 71 ("We will not pay for loss or damage caused by or resulting from . . . loss of use . . ."). *See, e.g.*, *Mudpie*, 487 F. Supp. 3d at 842 ("The separate provision for loss of use suggests that the 'direct physical loss of . . . property' clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force."); *Whiskey River on Vintage, Inc. v. Ill. Cas. Co.*, No. 4:20-cv-185-JAJ, 2020 WL 7258575, at *18 (S.D. Iowa Nov. 30, 2020) (unambiguous exclusion for loss or damage resulting from a "loss of use" applied to bar claims for coverage based on similar allegations).

- 31 -

Defendant's Motion to Dismiss

Zedan's alleged losses also fall within the Ordinance or Law exclusion, which provides: "We will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of . . . any ordinance or law: (1) Regulating the . . . use . . . of any property," and applies to "loss [that] results from: (a) An ordinance or law that is enforced even if the property has not been damaged . . ." Exh. 1 at 69.  There can be no dispute that the government orders limiting business operations to mitigate the spread of COVID-19 qualify as "ordinances" "regulating" the "use" of property. *See, e.g.*, *Newchops Rest.*, 2020 WL 7395153, at *7-8 (applying similar exclusion to bar coverage for alleged inability to use property as intended due to government closure orders); *Isaac's Deli*, 2021 WL 1945713, at *5 ("Assuming, *arguendo*, that Plaintiff had alleged a 'Covered Cause of Loss' under the Policy, their claim would still be barred under the Policy's 'Ordinance or Law' exclusion.").  Zedan itself alleges that the government orders regulated the use of its property.  *See, e.g.*, Dkt No. 1 ¶ 13 ("As a direct result of the Orders, Plaintiff was unable to operate its business, in whole or in part, while the Orders remained in effect.").  Therefore, its business losses are barred under the Policy.  Also expressly excluded from coverage is "loss or damage caused by or resulting from . . . "[a]cts or decisions, . . . of [a] governmental body," Exh. 1 at 73, such as the government orders at issue here.

Zedan's alleged losses are barred under each of these unambiguous exclusions.

**F.    The Complaint Fails to State a Claim for which Relief May Be Granted.**

**1.    Zedan's claims for breach of contract and for declaratory relief fail because Ohio Security properly denied coverage.**

Neither of Zedan's two causes of action—breach of contract and declaratory judgment— survives.  Zedan's breach of contract claim fails because Zedan has not plausibly alleged facts from which it would be reasonable to infer that its losses are covered under any of the Policy provisions on which it relies.  Even if it had so alleged, its claim would still fail because the Virus

- 32 -

Defendant's Motion to Dismiss

Exclusion, along with the Loss of Use, Ordinance or Law, and Acts or Decisions Exclusions, all bar coverage for Zedan's claimed losses under the facts it alleges.  An insurer is not obligated to pay an insured when losses are not due to a covered event, but are instead expressly excluded from coverage.  *Smith v. State Farm Ins.*, 144 Or. App. 442, 447 (1996).

Zedan also seeks a declaration that its economic losses are covered under the three Policy provisions it invokes.  Dkt No 1.  The federal Declaratory Judgment Act provides that, under appropriate circumstances, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Zedan is not entitled to declarations that its alleged business losses are covered under the Policy for the same reason that its breach of contract claim fails: it has not and cannot meet its burden of demonstrating a loss that triggers coverage under the Policy, and even if it could, the Virus and other cited Exclusions bar coverage for Zedan's alleged losses.[10]

Because Zedan's Complaint fails to state a viable claim either for breach of contract or declaratory relief, it should be dismissed.

---

[10] Zedan's declaratory judgment claim should be dismissed for the additional reasons that it improperly seeks to adjudicate only past conduct, and is wholly duplicative of Zedan's breach of contract claim.  *See, e.g.*, *Forge Underwriting Ltd. v. Greenspan*, No. 3:19-CV-810-JR, 2019 WL 7633156, at *17 (D. Or. Dec. 3, 2019) ("Declaratory relief is designed to resolve uncertainties or disputes that may result in future litigation.  It operates prospectively and is not intended to redress past wrongs . . . The purpose of a declaratory judgment is to enable parties to shape their conduct to avoid a breach and is used in the interests of preventative justice and to declare rights rather than execute them . . . Here, the purpose of the insureds' claims for declaratory judgment is to execute their rights in the coverage dispute action—not avoid that litigation.  Where there is an accrued cause of action for a past breach of contract or other wrong, declaratory relief is inappropriate."); *U.S. v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.").

Defendant's Motion to Dismiss

### 2.    The Class claims fall with Zedan's claims.

Zedan's claims on behalf of a proposed class, Dkt No. 1 ¶¶ 43-53, do not survive where its individual claims fail.  *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Brady v. AutoZone Stores, Inc.*, 960 F.3d 1172, 1175 (9th Cir. 2020) (class claims rendered moot when class representative no longer has financial stake in outcome of class claims); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("[T]o be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.").

### 3.    Amendment would be futile.

Zedan has not requested leave to amend, but any such request should be denied because amendment here would be futile.  *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) ("Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.") (internal quotation marks, modification and citations omitted); *Ascent Hospitality*, 2021 WL 1791490, at *4 ("[A]ny amendment to [plaintiff's] complaint would be futile because the court finds as a matter of law that the policy does not cover damage caused by COVID-19, either directly or indirectly."); *Isaac's Deli*, 2021 WL 1945713, at *7 ("Since Plaintiff cannot amend the terms of the Policy, amendment of the Complaint would also be in vain.").

Zedan's losses are simply not covered under any provision of the Policy.  And even if the government orders had caused direct physical loss of or damage to Zedan's property, the unambiguous Virus Exclusion bars coverage for all of Zedan's claims.  No artful pleading can

Defendant's Motion to Dismiss

alter this conclusion.  Any request for leave to amend in response to this motion should, therefore, be denied.

## VI.    **CONCLUSION**

Zedan fails to state claims for declaratory judgment or breach of contract upon which relief may be granted.  Ohio Security respectfully requests that the Court dismiss the Complaint in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

 Dated: May 28, 2021                        Respectfully submitted,


                                            /s/ John A. Bennett
                                            John A. Bennett, OSB #750407
                                            Stuart D. Jones, OSB #842568
                                            BULLIVANT HOUSER BAILEY PC
                                            One SW Columbia Street, Suite 800
                                            Portland, OR 97204
                                            Tel.: (503) 228-6351
                                            Fax: (503) 295-0916
                                            Email: john.bennett@bullivant.com
                                                     stuart.jones@bullivant.com

                                            Melissa D'Alelio (*admitted pro hac vice*)
                                            Sandra Badin (*admitted pro hoc vice*)
                                            ROBINS KAPLAN LLP
                                            800 Boylston Street, Suite 2500
                                            Boston, Massachusetts 02199
                                            Telephone: 617 267 2300
                                            Facsimile: 617 267 8288
                                            Email: mdalelio@robinskaplan.com
                                                     sbadin@robinskaplan.com

                                            *Attorneys for Defendant*
                                            *Ohio Security Insurance Company*

Defendant's Motion to Dismiss

## **RULE 7-2 CERTIFICATION**

This brief complies with the word-count limitation under LR 7-2(b) because it does not exceed 35 pages when including headings, footnotes, and quotations, but excluding the caption, table of contents, tables of authorities, signature block, exhibits, and any certificates of counsel.

- 36 -

Defendant's Motion to Dismiss

37208494.5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following either via the CM/ECF system which will send electronic notification to counsel, or via U.S. Mail, postage pre-paid, on this the 28th day of May, 2021:

Kyle A. Sturm, Esq.
Nicholas A. Thede, Esq.
FOREMAN STURM & THEDE, LLP
P.O. Box 13098
Portland, Oregon 97213
Telephone: (503) 206-5824
kyle.sturm@foremansturm.com
nick.thede@foremansturm.com

Nicholas A Kahl, Esq.
NICK KAHL, LLC
209 SW Oak Street, Suite 400
Portland, OR 97204
Telephone: (971) 634-0829
Facsimile: (503) 227-6840
nick@nickkahl.com

Craig Lowell, Esq.
WIGGINS, CHILDS, PANTAZIS,
FISHER, & GOLDFARB, LLC
The Kress Building,
301 19th Street North
Birmingham, AL 35203
Telephone: (205) 809-7707
Facsimile: (205) 254-1500
clowell@wigginschilds.com

*/s/ John A. Bennett*
**OF COUNSEL**

- 37 -

Defendant's Rule 12(b)(6)
Motion to Dismiss