UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ZEDAN OUTDOORS, LLC, doing business as Taylor's Bar & Grill, an Oregon limited liability company, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>OHIO SECURITY INSURANCE COMPANY, a foreign corporation,<br><br>        Defendant. | Case No. 3:21-cv-00407-YY<br><br>FINDINGS AND RECOMMENDATIONS |

YOU, Magistrate Judge.

## FINDINGS

    This insurance coverage dispute raises a question about which state and federal courts across the country have reached an overwhelming consensus: business loss insurance policies like the policy at issue here do not cover pandemic-related economic losses.

    Plaintiff Zedan Outdoor, LLC d/b/a Taylor's Bar & Grill, has filed a putative class action suit against defendant Ohio Security Insurance Company alleging claims for declaratory relief and breach of contract. *See* Complaint ¶¶ 43-53, ECF 1. The court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, as the matter in controversy

1 – FINDINGS AND RECOMMENDATIONS

exceeds $5,000,000, exclusive of interest and costs, and some members of the proposed class are citizens of different states than defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

Defendant has filed a motion to dismiss (ECF 14) pursuant to Federal Rule of Civil Procedure 12(b). The motion should be granted for the reasons discussed below.

I.    **Factual Background**

Plaintiff owns and operates Taylor's Bar & Grill in Eugene, Oregon. Compl. ¶ 2, ECF 1. Defendant issued plaintiff an "all risk" commercial property insurance policy (Policy No. BFS (20) 58036184) covering the period from May 17, 2019, to May 17, 2020. *Id.* ¶ 7; Decl. Melissa D'Alelio, Ex. 1, at 2, ECF 15-1 ("policy").

Beginning in March 2020, Oregon Governor Kate Brown and local civil authorities issued a series of orders and directives to slow the spread of the novel coronavirus. Compl. ¶ 12, ECF 1. Plaintiff alleges that these orders "restricted access to and operations of Plaintiff's business, limited groups of people, curtailed travel, and generally limited commercial activity," forced it to "suspend, in whole or in part, its business operations," *id.* ¶ 11-13, caused direct physical losses or damage to plaintiff and similarly situated businesses, *id.* ¶¶ 4, 13, 15, and that when plaintiff and "similarly situated businesses were permitted to re-open, they could only do so with significant alterations to their premises and business models at great cost . . . to comply with the Orders." *Id.* ¶ 13; *see also id.* ¶ 14 ("Plaintiff's business property cannot be used for its intended purposes and its business activities have necessarily been suspended or interrupted").

II.    **Rule 12(B)(6)—Failure to State a Claim**

A 12(b)(6) motion to dismiss tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a Rule 12(b)(6) motion, "the complaint must allege 'enough facts to state a claim to

relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A Rule 12(b)(6) motion may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the plaintiff. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

### III. Insurance Policy Interpretation in Oregon

A federal court, sitting in diversity, applies state law to interpret an insurance policy. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). Under Oregon law, the interpretation of an insurance policy is a question of law. *Hunters Ridge Condo. Ass'n v. Sherwood Crossing*, LLC, 285 Or. App. 416, 422 (2017) (citing *Hoffman Const. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992)).

"The overriding goal in construing an insurance policy is to 'ascertain the intention of the parties.'" *Id.* at 422 (quoting *Dewsnup v. Farmers Ins. Co.*, 349 Or. 33, 39-40 (2010)). The court determines "the intention of the parties by analyzing the policy's express terms and conditions." *Id*. (citing *Hoffman*, 313 Or. at 469; O.R.S. 742.016(1) (providing that, with some exceptions, "every contract of insurance shall be construed according to the terms and conditions of the policy")). The court interprets the terms of the policy from the perspective of an "ordinary

3 – FINDINGS AND RECOMMENDATIONS

purchaser of insurance." *Id*. (quoting *Congdon v. Berg*, 256 Or. App. 73, 87 (2013)) (quotation marks omitted). "The language used in a contract of insurance is entitled to a construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed to support a view that will protect the insured and prevent forfeiture." *Schweigert v. Beneficial Standard Life Ins. Co.*, 204 Or. 294, 301 (1955) (citations omitted).

If an insurance policy explicitly defines a phrase, the court must apply that definition. *Holloway v. Republic Indemn. Co. of America*, 341 Or. 642, 650 (2006). "If the policy does not define the phrase in question, [the court] 'resort[s] to various aids of interpretation to discern the parties' intended meaning." *Id*. (quoting *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or. 303, 307-08 (1999)). "Under that interpretive framework, [the court] first consider[s] whether the phrase in question has a plain meaning, i.e., whether it 'is susceptible to only one plausible interpretation.'" *Id*. (quoting *Groshong*, 329 Or. at 308). "If the phrase in question has a plain meaning, [the court] will apply that meaning and conduct no further analysis." *Id*. "If the phrase in question has more than one plausible interpretation, [the court] will proceed to the second interpretive aid"—"[t]hat is, [the court] examine[s] the phrase in light of 'the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole.'" *Id*. (quoting *Hoffman*, 313 Or. at 470) (alteration in original).

"If the ambiguity remains after the court has engaged in those analytical exercises, then 'any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company. . . .'" *North Pacific Ins. Co. v. Hamilton*, 332 Or. 20, 25 (2001) (quoting, among other cases, *Hoffman*, 313 Or. at 470 (alteration in original)); *see also Allen v. Cont'l Cas. Co.*, 280 Or. 631, 633 (1977) ("[A]lthough an insurance company is ordinarily entitled to the enforcement of an insurance policy as written by the company if its terms are clear and

unambiguous, in the event of an ambiguity in the terms of an insurance policy any reasonable doubt will be resolved against the insurance company and in favor of extending coverage to the insured."). "[A] term is ambiguous . . . *only* if two or more plausible interpretations of that term withstand scrutiny, i.e., continue[ ] to be reasonable . . . ." *Hoffman*, 313 Or. at 470 (emphasis in original).

The general rule in Oregon is that the insured bears the initial burden of proving coverage, the insurer has the burden of proving exclusions to coverage, and the insured has the burden of proving exceptions to exclusions. *Employers Ins. of Wausau, A Mut. Co. v. Tektronix, Inc.*, 211 Or. App. 485, 509, 514 (2007), *rev den,* 343 Or. 363 (2007) (reasoning the party seeking the benefit of a particular provision generally bears the burden of proving its application).

### IV.   Coverage Provisions and Analysis

Plaintiff seeks coverage under policy provisions that share the requirement that the insured sustain "direct physical loss of or damage to" covered property. Complaint ¶¶ 10, 17, 20-22, ECF 1.

The "Building and Personal Property Coverage" provision states that defendant "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Policy 36, ECF 15-1.

The "Business Income (and Extra Expense) Coverage" provision states in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 53.  A "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 68.  The "period of restoration" begins "72 hours after the time of direct physical loss or damage" and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced" or "when business is resumed at a new permanent location."  *Id.* at 61, 98-99, 100.

The policy also provides "Extra Expense" coverage for "necessary expenses" incurred during the period of restoration that "would not have [been] incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."  *Id.* at 53.[1]

Plaintiff asserts that it has triggered the policy's coverage provisions by sufficiently alleging direct physical loss of its property.  Pl.'s Opp. 11, ECF 19.  Plaintiff argues its interpretation of "direct physical loss of or damage to property" is reasonable, Oregon case law supports its interpretation, and Chief Judge Marco Hernández's recent decision in *Dakota Ventures, LLC v. Oregon Mut. Ins. Co.*, 3:20-CV-00630-HZ, 2021 WL 3572657, (D. Or. Aug. 11, 2021), is non-binding and distinguishable.  *Id.* at 12-24.  Plaintiff further argues that the orders issued by civil authorities are a covered cause of loss, it has alleged sufficient facts to establish the business income and extra expense coverages, and several exclusions are inapplicable.  *Id.* at 25-34.  But as explained below, coverage is precluded because plaintiff has not and cannot plausibly allege any direct physical loss or damage to covered property.

*Dakota Ventures* involved nearly identical pandemic-related claims and policy language.  *See* Pl.'s Opp. 22, ECF 19 (conceding *Dakota Ventures* "involved substantively identical policy

---

[1] Although the complaint alleged claims for coverage under the policy's Civil Authority provision, plaintiff has withdrawn those claims.  *See* Pl.'s Opp. 35, ECF 19.

6 – FINDINGS AND RECOMMENDATIONS

language"). There, as in this case, the insured restaurant owner alleged that the insurer breached its "all risk" insurance policy by denying "coverage for losses stemming from the COVID-19 pandemic," including losses caused by "the Governor's orders" restricting dine-in services. 2021 WL 3572657, at *1. Also, like this case, the insured sought coverage under numerous coverage provisions that depended on whether the insured's claimed losses constituted "direct physical loss or damage to" covered property, a phrase that the policy did not define. *Id.* at *1-2. The court granted a Rule 12(b)(6) motion to dismiss, like the motion filed in this case, and dismissed the case with prejudice.

The decision in *Dakota Ventures* is well-reasoned and persuasive. After examining the dictionary definition of "damage," the court determined that "the plain meaning of the phrase 'direct physical loss of or damage to property' is direct (without any intervening space or time) physical (of or relating to natural or material things) loss of (the act or fact of losing) or damage (injury or harm) to property." *Id.* at *6 (citing WEBSTER'S THIRD NEW INT'L DICTIONARY 571). "The plain meaning of those terms requires a Covered Cause of Loss to directly cause property to be lost or physically damaged for coverage to exist . . . ." *Id.* (citing *Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 15-1932-CL, 2016 WL 3267247, at *5 (D. Or. June 7, 2016), *vacated by stipulation*, 2017 WL 1034203 (D. Or. Mar. 6, 2017); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. 98-434-HU, 1999 WL 619100, at *5 (D. Or. Aug. 4, 1999); and *Wyo. Sawmills, Inc. v. Transp. Ins. Co.*, 282 Or. 401, 405 (1978)). Moreover, modification of the words "loss" and "damage" with the word "physical" "means that the insured must demonstrate a loss of functionality, value, or use that is physical in nature, which requires that the loss or damage cause a tangible alteration of the physical condition, possession, or presence of the property." *Id.* at *9. For support, the court observed that "Oregon courts have construed the phrase 'direct

7 – FINDINGS AND RECOMMENDATIONS

physical loss of or damage to property' and similar phrases to require some degradation in the condition of the property to invoke coverage." *Id.* at *7 (citing *Columbiaknit*, 1999 WL 619100, at *4; *Wyo. Sawmills*, 282 Or. at 406). The court also cited to Ninth Circuit decisions holding "that the phrase 'direct physical loss' required damage to a tangible item of property." *Id.* (citing *Sentience Studio, LLC v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th Cir. 2004); *Commonwealth Enters. v. Liberty Mut. Ins. Co.*, 101 F.3d 705, at *2 (9th Cir. 1996)).

The court found more support for this interpretation by looking at the context in which the phrase "direct physical loss of or damage to" appeared in the policy. 2021 WL 3572657, at *12. Specifically, the court observed that the Business Income and Extra Expense provisions provide coverage for certain losses during the "period of restoration," which starts 72 hours after the "physical loss or damage" occurs and ends on "[t]he date when the premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when the insured's "business is resumed at a new permanent location." *Id.* Plaintiff's policy contains the same "period of restoration" provision. *See* Policy 61, 98-99, 100, ECF 15-1. The court found "[t]hat description of 'period of restoration' implies that Plaintiff must lose or suffer physical damage to its tangible property which requires repair or replacement in order to invoke coverage." *Id.*

Applying the plain meaning of the phrase "direct physical loss or damage to," the court held that the complaint did "not allege a Covered Cause of Loss that would trigger coverage under any of the relevant provisions of the Policy" and observed that the insured's losses were "purely economic." *Id.* at *8-9. The insured alleged it had suffered "direct physical loss and damage" because "the presence of COVID-19 on property damages property [and] makes it unsafe" and "COVID-19 has impaired Plaintiff's property by making it unusable." *Id.* at *8 (original alterations omitted). However, the insured did "not allege that its restaurants or the

business personal property located inside them was lost, destroyed, or physically changed in any manner," nor did the insured "allege that any nearby property suffered direct physical loss or damage that physically prevented ingress or egress from [its] restaurants or that resulted in an action of civil authority that prohibited access to its restaurants." *Id.* The court emphasized that the complaint lacked

> any facts from which a factfinder could conclude that any of Plaintiff's property was lost or damaged. . . . Even assuming that the virus was present in Plaintiff's restaurants, Plaintiffs' property has not been lost or damaged by the virus in a manner that required it to suspend operations in order to conduct repairs or replace the property.
> . . .
> [The complaint] alleges only that government orders restricted the manner in which its restaurants may serve customers, while leaving the property itself in Plaintiff's possession, unharmed, and undamaged.

*Id.* The same is true in this case.

In the weeks following the decision in *Dakota Ventures*, Chief Judge Hernández dismissed with prejudice four other cases with similar claims and the same policy language. *See NUE, LLC v. Oregon Mut. Ins. Co.*, No. 3:20-CV-01449-HZ, 2021 WL 4071862, at *13 (D. Or. Sept. 4, 2021), *appeal filed* No. 21-35813 (9th Cir. Sept. 28, 2021); *Nari Suda LLC v. Oregon Mut. Ins. Co.*, No. 3:20-CV-01476-HZ, 2021 WL 4067684, at *8 (D. Or. Sept. 6, 2021), *appeal filed* No. 21-35846 (9th Cir. Oct. 7, 2021); *HILLBRO LLC v. Oregon Mut. Ins. Co.*, No. 3:21-CV-00382-HZ, 2021 WL 4071864, at *10 (D. Or. Sept. 7, 2021), *appeal filed* No. 21-35810 (9th Cir. Sept. 28, 2021); *N. Pac. Mgmt., Inc. v. Liberty Mut. Fire Ins. Co.*, No. 3:21-CV-00404, 2021 WL 4073278, at *4 (D. Or. Sept. 7, 2021), *appeal filed* No. 21-35842 (9th Cir. Oct. 6, 2021). Since then, Judge Michael Mosman and Judge Stacie Beckerman adopted this reasoning and reached the same result in their cases. *See RV Agate Beach, LLC v. Hartford Fire Ins. Co.*, No. 3:21-CV-00460-MO, 2021 WL 4851304 at *2 (D. Or. Oct. 16, 2021) (J. Mosman); *The Oregon*

*Clinic, PC v. Fireman's Fund Insurance Company*, 3:21-CV-00778-SB, 2021 WL 5921370, at *8-10 (D. Or. Dec. 15, 2021) (J. Beckerman).[2]

Although the Ninth Circuit has not decided this issue under Oregon law, it recently held that under California law, the phrase "direct physical loss of or damage to" means that "for loss to be covered, there must be a distinct, demonstrable, physical alteration of the property." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 891 (9th Cir. 2021) (simplified) (citing *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779, 115 Cal. Rptr. 3d 27, 38 (2010)). The six other federal circuit courts that have been presented with the question whether the coronavirus or government shutdown orders cause "direct physical loss or damage to" property, or similar phrases, have uniformly held that they do not. *See 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 21-80-CV, 2021 WL 6109961, at *1-4 (2d Cir. Dec. 27, 2021); *Goodwill Industries of C. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, No. 21-6045, 2021 WL 6048858, at *1-3 (10th Cir. Dec. 21, 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 2021 WL 5833525, at *2-6 (7th Cir. 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401-03 (6th Cir. 2021); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *1-3 (11th Cir. Aug. 31, 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143-45 (8th Cir. 2021).

Indeed, the overwhelming consensus in state and federal courts nationwide is that "neither COVID-19 nor the governmental orders associated with it cause or constitute property

---

[2] In *Papi, LLC v. The Cincinnati Ins. Co.*, 3:21-cv-00405-JR, Judge Jolie Russo also recently found the analysis in *Dakota Ventures* regarding the phrase "direct physical loss of or damage to property" to be persuasive, although that case involves interpreting materially different coverage provisions. *See* Findings and Recommendation 13 (Nov. 10, 2021), ECF 24.

10 – FINDINGS AND RECOMMENDATIONS

loss or damage for purposes of insurance coverage." *The Oregon Clinic*, 2021 WL 5921370, at *4 (quoting *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F. Supp. 3d 1142, 1148 (N.D. Cal. 2021), *appeal filed* No. 21-15585 (9th Cir. Apr. 1, 2021)); *see also Dakota Ventures*, 2021 WL 3572657, at *8 (collecting cases); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, 2:20-CV-00597-BJR, 2021 WL 2184878, at *1 (W.D. Wash. May 28, 2021) ("Like the overwhelming consensus that has formed, this Court determines that COVID-19 does not cause the physical loss or damage to property required as a condition precedent to trigger coverage in all the relevant policies."), *reconsideration denied sub nom. Vita Coffee LLC v. Fireman's Fund Ins. Co.*, 2:20-CV-01079-BJR, 2021 WL 3077922 (W.D. Wash. July 21, 2021), *appeal filed* No. 21-35496 (9th Cir. June 25, 2021); *Assoc. in Periodontics, PLC v. Cincinnati Ins. Co.*, 2021 WL 1976404, at *6 (D. Vt. May 18, 2021) ("The Court now joins the majority of courts throughout the country in concluding that the COVID-19 pandemic did not cause physical damage or loss to covered property as defined in the Policy. The virus posed a threat to people, while ultimately leaving the property and its environment unscathed.").

Plaintiff attempts to distinguish *Dakota Ventures* on the basis that its complaint does not allege that COVID-19 damaged or impaired its property, but "[r]ather . . . that the Orders deprived it of and limited the physical use of its property." Pl.'s Opp. 23, ECF 19. But plaintiff alleges no more than a temporary loss of use. The Ninth Circuit rejected a similar argument in *Mudpie*, where it held that the insured had not suffered a "direct physical loss" because California's Stay Home Orders only "temporarily prevented Mudpie from operating its store as it intended." 15 F.4th at 892. Like plaintiff here, Mudpie failed to allege that it was "permanently dispossessed of its property." *Id.*

11 – FINDINGS AND RECOMMENDATIONS

Chief Judge Hernández similarly rejected this argument just weeks after deciding *Dakota Ventures*, finding a "temporary limitation or loss of use of the property" is not "equivalent" to a "direct physical loss." *N. Pac. Mgt.*, 2021 WL 4073278, at *7. "[T]he losses Plaintiffs allege are purely economic and not the result of any 'direct physical loss or damage to property.'" *Id.*

Plaintiff argues that *Dakota Ventures* is "at odds" with another case from this district, *James W. Fowler Co. v. QBE Ins. Corp.*, in which the court held that "'direct physical loss' as used in the Policy does not require physical damage." 474 F. Supp. 3d 1149, 1159 (D. Or. 2020), *rev'd and remanded on other grounds,* No. 20-35926, 2021 WL 4922552 (9th Cir. Oct. 21, 2021).[3] Plaintiff argues that because *Dakota Ventures* and *Fowler* "come to differing conclusions regarding whether deprivation of physical use constitutes 'direct physical loss of' property," this shows that the phrase is ambiguous. Pl.'s Opp. 25, ECF 19.

Nevertheless, in *Fowler*, the insured alleged that a micro-tunnel boring machine ("MTBM") was "*permanently* buried underground," *id.* at 1158 (emphasis added), and "it is either impossible or unreasonably expensive to recover it." *Id.* at 1157. Again, here, plaintiff has not alleged that it was "permanently dispossessed of its property." *Mudpie*, 15 F.4th at 892.

The parties discuss one additional issue—pertaining to the virus exclusion—that was not at issue in the *Dakota Ventures* decision. Defendant argues the policy's virus exclusion bars plaintiff's claims, and plaintiff counters that because it alleged that the orders, not the virus or the pandemic, were the "predominant cause" or "efficient proximate cause" of its loss, the virus

---

[3] In its unpublished memorandum decision, the Ninth Circuit held that, "like the district court, we adopt Fowler's interpretation that it has suffered a 'direct physical loss' if the MTBM is either impossible or unreasonably expensive to recover." *James W. Fowler Co. v. QBE Ins. Corp.*, No. 20-35926, 2021 WL 4922552, at *1 (9th Cir. Oct. 21, 2021). The Ninth Circuit reversed because there was a genuine dispute of material fact whether the boring machine was indeed "impossible or unreasonably expensive to recover." *Id.*

exclusion is inapplicable. *See* Pl.'s Opp. 29-31; Def.'s Reply 22-26, ECF 20. In *Mudpie*, the Ninth Circuit, found a nearly identical virus exclusion precluded nearly identical claims under California law. *See* 15 F.4th at 891. Nevertheless, because plaintiff has not demonstrated that coverage exists, the court need not determine whether any exclusion, including the virus exclusion, applies. *See N. Pac. Mgmt.*, 2021 WL 4073278, at *7; *Employers Ins. of Wausau*, 211 Or. App. at 514.

In sum, the reasoning in *Dakota Ventures*, and cases like it across the country, is persuasive and applies with equal force to the policy and claims in this case. Similarly, dismissal with prejudice is the appropriate result here. *See Dakota Ventures*, 2021 WL 3572657, at *13 ("Because the Court finds that Plaintiff's FAC cannot be amended to plausibly allege a claim under the terms of the Policy, the Court denies leave to amend."); *RV Agate Beach*, 2021 WL 4851304 at *2 ("Because the Court finds that Plaintiffs' complaint cannot be amended to plausibly allege a claim under the terms of the policy, the Court denies leave to amend.").

## RECOMMENDATIONS

Defendant's motion to dismiss (ECF 14) should be GRANTED and this action should be dismissed with prejudice.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Monday, January 24, 2022. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

13 – FINDINGS AND RECOMMENDATIONS

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  January 10, 2022.

/s/ Youlee Yim You<br>
Youlee Yim You<br>
United States Magistrate Judge